1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EXPEDITORS INTERNATIONAL OF
WASHINGTON INC,

                    Plaintiff,

        v.

ARMANDO CADENA SANTILLANA,

                    Defendant.

CASE NO. 2:20-00349-RAJ-BAT

**REPORT AND
RECOMMENDATION**

Defendant Armando Cadena Santillana ("Mr. Cadena") brings a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Dkt. 23. Mr. Cadena contends that (1) this Court lacks personal jurisdiction over him as he is a Mexican citizen who was employed by a Mexican subsidiary of Plaintiff Expeditors International of Washington, Inc. ("Expeditors Washington"); (2) Expeditors Washington, as a third-party to the underlying dispute, lacks standing to assert its claims; and (3) the Complaint does not state plausible claims for conversion and imposition of a constructive trust.

Expeditors Washington contends that a contractual forum-selection clause contained in Mr. Cadena's stock option agreements establishes personal jurisdiction as to its declaratory judgment claim and that the Court should exercise pendent personal jurisdiction as to its conversion and constructive trust claims. Dkt. 26.

The undersigned recommends that the motion to dismiss be granted.

REPORT AND RECOMMENDATION - 1

# I. BACKGROUND

A.    Procedural Background

On February 27, 2020, Wells Fargo, N.A. ("Wells Fargo") filed a Complaint for Interpleader, naming Mr. Cadena and Expeditors Washington as defendants. *See Wells Fargo Bank, N.A. v Armando Cadena et al.*, W.D.Wash. No. 2:20-cv-00317-RAJ-BAT (the "Interpleader Action").

On March 3, 2020, Expeditors Washington filed the Complaint the instant motion seeks to dismiss, bringing claims for (1) conversion (Dkt. 1, ¶¶ 23–27); (2) the imposition of a constructive trust over the Wells Fargo Account and Expeditors of Washington common stock subject to the Expeditors Employee Stock Purchase Plan (the "ESPP") (*id.* ¶¶ 28–31); and (3) a judgment declaring the rights and obligations of the parties under the ESPP, including Mr. Cadena's right to exercise stock options granted under the ESPP (*id.* ¶¶ 18–22).

Underlying both actions are claims that Mr. Cadena, a former employee of Expeditors International de Mexico S.A. de C.V. ("Expeditors Mexico") engaged in financial misconduct. The misconduct alleged is Mr. Cardena's submission of fraudulent invoices for services rendered to Expeditors Mexico by Agentes Aduanales Al Servicio Del Comercio Exterior, SA.DE C.V. ("AASCE"), a company in which Mr. Cadena is a shareholder. Expeditors Washington claims that the amount of monies fraudulently invoiced to Expeditors Mexico exceeds $2.85 million. *See* Dkt. 1 (Complaint in Expeditors Action). The Interpleader Action was initiated by Wells Fargo after Expeditors Washington alerted Wells Fargo to a wire transfer from Defendant Cadena's personal account in a Mexican bank to a Wells Fargo account, with a balance in excess of $1 million. *Id.*

On April 15, 2020, the Court entered a Stipulation and Order for Interpleader of Funds and Dismissal (the "Interpleader Order") in the Interpleader Action. *See* Dkt. 13. In relevant part, the Interpleader Order (a) authorized Wells Fargo, N.A. to deposit certain funds in the Registry of the Court, and (b) dismissed Wells Fargo with prejudice. Pursuant to the Interpleader Order, Wells Fargo deposited the sum of $1,109,437.23 (the "Interpleaded Funds") into the Court Registry on April 30, 2020. On August 31, 2020, the Court granted Expeditors Washington's Motion to Stay the Interpleader Action "until such time as the rightful owner of the Interpleaded Funds is determined." Dkt. #21.

Before the Interpleader Action or this case was initiated, Mr. Cadena filed suit on January 6, 2020, against Expeditors Mexico in Mexican Labor Court for violations of Mexican law. *See Armando Cadena Santillana v. Expeditors International De Mexico, S.A. de C.V.*, No. 53/2020 (Special Labor Board No. 15, Mexico City). According to Kevin Osborn, Vice President, Associate General Counsel, and Chief Ethics & Compliance Officer for Plaintiff Expeditors of Washington, Expeditors Mexico has not yet been served with a complaint. Dkt. 27, ¶ 15.

B.    Factual Background

    1.    The Parties and Related Entities

Mr. Cadena was Regional Comptroller of Expeditors Mexico, a Mexican company headquartered in Mexico City (*see* Dkt. 25, Declaration of Joshua D. Harms ("Harms Decl.") Ex. A (Expeditors Mexico Corp. Deed) at 2) until termination of his employment.[1] Dkt. 1, ¶¶ 7, 12. Expeditors Mexico is a wholly-owned subsidiary of Expeditors Washington, a global logistics and freight-forwarding company headquartered in Seattle, Washington. *Id.* ¶ 7.

---

[1] Mr. Cadena claims he was terminated on November 4, 2019 in violation of Mexican labor law, while Expeditors Mexico contends Mr. Cadena was terminated with cause on December 4, 2019 "in accordance with Mexican Federal Labor Law." Dkt. 1, ¶ 12.

Mr. Cadena was and continues to be a shareholder of AASCE, a Mexican company headquartered in Mexico City that provides Expeditors Mexico with customs brokerage services. *See id*. ¶ 9.

### 2.     The Allegations of Financial Misconduct

Expeditors Washington alleges that Mr. Cadena, in concert with at least three other Expeditors Mexico employees, "fraudulently invoiced higher amounts for services rendered [by AASCE] to Expeditors Mexico and then transferred the overprice to accounts for which the co-conspirators and/or their family members were personal beneficiaries." Dkt. 7, *Id*. ¶ 9. Expeditors Washington contends that the fraudulently invoiced amounts to Expeditors Mexico exceeded $2.85 million.

### 3.     Mr. Cadena's Personal Savings

On November 8, 2019 the Chief Financial Officer of Expeditors Washington contacted Wells Fargo, N.A. and demanded that it "freeze all of Armando Cadena's assets at Wells Fargo." Interpleader Action Dkt. 1, ¶ 12. At that time, Mr. Cadena maintained a deposit account at Wells Fargo (Acct. #XXXXXX1567; the "Wells Fargo Account"). *Id*. ¶ 10. Expeditors Washington informed Wells Fargo of an alleged wire transfer from Mr. Cadena's account at CIBanco S.S. to the Wells Fargo Account in the amount of $59,160.89 (roughly 5% of the $1,115,321.96 balance of Mr. Cadena's personal savings). *See id*. ¶¶ 12, 17. Wells Fargo froze the entire account.

On April 30, 2020, Wells Fargo deposited the balance of the Wells Fargo Account ($1,109,437.23), into the Court Registry (Receipt #SEA100717), representing the balance less the amount deducted for Wells Fargo's attorneys' fees and costs.

### 4.     Stock Purchase Plan

As an employee Expeditors Mexico (Dkt. 1 ¶ 7), Mr. Cadena participated in the

Expeditors Employee Stock Purchase Plan (the "ESPP") for many years. The stock option grants at issue here were received by Mr. Cardena in 2014, 2015, and 2016. Dkt. 27, Declaration of Kevin Osborn, ¶ 4. The grants were made pursuant to a written Expeditors Stock Option Plan and are governed by specific Stock Option Agreements. *Id.*, ¶¶ 4, 5, 6 and Exs. B, C, and D. Each Stock Option Agreement states, in relevant part:

> This Agreement and the [applicable] Plan set forth the entire understanding between the Company and the Optionee with respect to the Option and shall be construed and enforced under the laws of the State of Washington. Any action brought with respect to this Agreement or the Plan shall be brought in a court in King County, Washington.

*Id.*, Ex. B (at ¶ 15), Ex. C (at ¶ 15), and Ex. D (at ¶ 15).

Paragraph 10 of the Stock Option Agreements governs the exercise of options and provides that each exercise of the option shall be by written notice delivered to Expeditors Washington in Seattle. Dkt. 27, Ex. B (at ¶ 10), Ex. C (at ¶ 10), and Ex. D (at ¶ 10). "Alternatively, the Optionee may pay for all or any portion of the exercise price by delivery of previously acquired shares of Common Stock with a fair market value equal to or greater than the full exercise price or by complying with any other payment mechanism which the Plan Administrator may approve at the time of exercise." *Id.*

On January 29, 2020, Mr. Cadena sent a letter to Fidelity Stock Plan Services, seeking to make a cashless exercise of 5,600 options of Expeditors common stock. Dkt. 1, ¶ 13.

5.    Jurisdictional Facts

Mr. Cadena is domiciled and resides in Mexico City, Mexico. Dkt. 24, Declaration of Armando Cadena Santillana ("Cadena Decl."), ¶ 2. Mr. Cadena does not reside in Washington and has never been employed in Washington or by a Washington entity. *Id.* ¶ 11. Mr. Cadena does not own or lease real property in Washington (*id.* ¶ 4); does not maintain an office or keep

files, or handle or receive correspondence in Washington (*id*. ¶¶ 5-7); and, has no employees or registered agents in Washington (*id*. ¶ 8).

Expeditors is a Washington corporation based in Seattle, with subsidiaries around the world and employs about 17,750 persons globally. According to Kevin Osborn, the Vice President, Associate General Counsel, and Chief Ethics & Compliance Officer of Expeditors Washington, Expeditors has an established Code of Business Conduct ("Code") that applies to every employee, director, and officer worldwide. Dkt. 27, Declaration of Kevin Osborn, ¶ 3. Mr. Osborn states that "in his capacity as regional controller for the Company's Mexican branches, and specifically as to accounting matters, [Mr.] Cadena reported directly to Bradley Powell, the Chief Financial Officer in Seattle. *Id*., ¶ 2.

The ESPP is administered by Fidelity Stock Plan Services, LLC ("Fidelity Services"), a Delaware company headquartered in Massachusetts. *Id.*, Dkt. 25, Harms Decl., Ex. E (Fidelity Services 2020 Annual Report). The proceeds of the ESPP (*i.e.*, Expeditors Washington stock, cash related to Mr. Cadena's participation in the ESPP, and earned income on such property, collectively, "Stock Plan Proceeds"), is held in a trust named SPS Participant Trust – Expeditors International of Washington, Inc. (the "ESPP Trust"). The ESPP Trust has its situs in Massachusetts. Its trustee, the Fidelity Personal Trust Company ("Fidelity Trust Co.") is a federally chartered bank headquartered in Massachusetts, See generally Dkt. 25, Harms Decl., Ex. C (ESPP Trust Decl.).

In his January 19, 2020 letter to Fidelity Services, Mr. Cadena advised Fidelity that he had retained Seattle counsel to assist him in the matter of exercising his stock options. Dkt. 1. ¶¶ 18–22.

1

## II.  STANDARDS OF REVIEW

2        Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a

3   motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the

4   light most favorable to the nonmoving party." In deciding whether to dismiss a claim under this

5   rule, the court is generally limited to reviewing only the complaint but may review materials

6   which are properly submitted as part of the complaint and may take judicial notice of undisputed

7   matters of public record that are outside the pleadings. *Lee v. City of Los Angeles*, 250 F.3d 668,

8   688-89 (9th Cir. 2001).

9        Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

10  plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Sher v. Johnson*, 911

11  F.2d 1357, 1361 (9th Cir.1990). Where, as here, the motion is based on written materials rather

12  than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional

13  facts." *Id*.; *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir.1995).

14  Although the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba*

15  *Marketing Systems, Inc. v. Jobar International, Inc*., 551 F.2d 784, 787 (9th Cir.1977),

16  uncontroverted allegations in the complaint must be taken as true. *AT&T v. Compagnie Bruxelles*

17  *Lambert*, 94 F.3d 586, 588 (9th Cir.1996).

18       Conflicts between parties over statements contained in affidavits must be resolved in the

19  plaintiff's favor. *Id*.; *see Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087

20  (9th Cir.2000) *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme*

21  *Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc).

22  //

23  //

REPORT AND RECOMMENDATION - 7

III.  MOTION TO STRIKE

Mr. Cadena moves to strike the Declaration of Kevin Osborn (Dkt. 27) and Exhibits E and H thereto and the Declaration of Bradley Powell (Dkt. 28) as the evidence is not incorporated into the Complaint, subject to judicial notice, or offered to advance a jurisdictional argument rebutting a factual attack on standing. Dkt. 29, p. 5 n.1.

The Court agrees that it is not necessary to convert Mr. Cadena's motion to dismiss into a motion for summary judgment as it has considered only the pleadings, documents properly submitted as part of the complaint (or on which the complaint necessarily relies), documents subject to judicial notice, and facts invoking personal and subject matter jurisdiction. *See, e.g., Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

IV.  DISCUSSION

A.    Personal Jurisdiction

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Personal jurisdiction over an out-of-state defendant must comport with the forum state's long arm statute and Constitutional due process. *Id*. at 800–01.

Washington's long-arm statute extends personal jurisdiction to the broadest reach that the United States Constitution permits, so the jurisdictional analysis under state law and federal due process are the same. *Id*. Due process requires that the defendant have "certain minimum contacts [with the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The "minimum contacts" requirement can be satisfied by establishing

either general or specific personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 801–02.

1.    General Jurisdiction

The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (citation omitted). General personal jurisdiction may also arise from "continuous and systematic general business contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), that "approximate physical presence" in the forum state. *Bancroft & Masters,* 223 F.3d at 1086.

Expeditors Washington has not alleged that Mr. Cadena has substantial, continuous and systematic contacts with Washington that approximate physical presence. *See also*, Dkt. 24, Cadena Decl., ¶¶ 2–11, 13–15. Expeditors Washington has failed to make a prima face showing on this issue.

2.    Specific Jurisdiction

Without a basis for general jurisdiction, Expeditors Washington must establish specific jurisdiction. The Ninth Circuit applies a three-prong test when determining whether to exercise specific jurisdiction:

(a)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(b)    the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(c)    the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 800. Under this test, the plaintiff bears the burden of demonstrating the first two factors. The burden then shifts to the defendant to make a "compelling case" as to why exercise of specific jurisdiction would be unreasonable. *Id.*

Expeditors Washington must show why this Court should exercise personal jurisdiction over Mr. Cadena with respect to each individual claim. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977) (Where a plaintiff raises two separate causes of action, the court must have in personam jurisdiction over the defendant with respect to each claim. *See* 6 C. Wright & A. Miller, Federal Practice and Procedure s 1588, at p. 816 (1971).[2]

In its Complaint, Expeditors Washington alleged that this Court has personal jurisdiction over Mr. Cadena because he sent a letter to Expeditors Washington in Seattle seeking to exercise his stock options and he hired Seattle-based counsel to help him in this endeavor. In response to the motion to dismiss, Expeditors Washington argues that the forum-selection clauses in each of the Stock Option Agreements signed by Mr. Cadena establishes personal jurisdiction as to its declaratory judgment claim and that the Court should exercise pendent jurisdiction over its conversion and constructive trust claims. These issues are discussed in more depth later in this report and recommendation.

The Court first engages in the appropriate jurisdictional analysis and concludes that Expeditors Washington has not met its burden of proof to establish personal jurisdiction as to its

---

[2] If the court determines that there has been a sufficient showing of personal jurisdiction to reach trial with regard to one claim, but not the other, it may or may not be appropriate to assume jurisdiction over the other claim under principles analogous to the doctrine of pendent jurisdiction. *See Data Disc*, 557 F.2d at 1289, n.8. This issue is discussed in more detail later in this report and recommendation.

REPORT AND RECOMMENDATION - 10

conversion and constructive trust claims.

  (a)  Purposeful Direction

  Because Expeditors Washington's claims are grounded in the alleged financial misconduct and fraud of Mr. Cadena, the purposeful direction analysis is appropriate. *Schwarzenegger*, 374 F.3d at 802-803 (the "purposeful direction" analysis is applied in intentional tort cases and the "purposeful availment or direction" analysis is used in suits sounding in contract). In purposeful direction cases, Ninth Circuit courts apply a three-part "effects" test: "the defendant allegedly must have (i) committed an intentional act, (ii) expressly aimed at the forum state, (iii) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir.2011).

  A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (publishing magazines in Ohio and circulating them in the forum state); *accord Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899 (9th Cir.2002) (distributing pop music albums from Europe in the forum state); *World–Wide Volkswagen*, 444 U.S. 286, 297–298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (delivering products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State"); *Plant Food Co–Op v. Wolfkill Feed & Fertilizer Corp.*, 633 F.2d 155, 158–60 (9th Cir.1980) (shipping defective and mislabeled fertilizer from Canada to Montana).

    (i)  Intentional Act

  The "intentional act" requirement "refer[s] to an intent to perform an actual, physical act

1    in the real world" as opposed to "an intent to accomplish a result or consequence of that act."

2    *Schwarzenegger*, 374 F.3d at 806. Expeditors Mexico alleges in its Complaint that Mr. Cadena

3    engaged in fraud and theft when he fraudulently increased the amount invoiced higher amounts.

4    These are intentional acts.

5                            (ii)    Expressly Aimed at Forum State

6            The intentional fraud and theft alleged in Expeditors Washington's complaint are relevant

7    to the jurisdictional analysis only if they were expressly aimed at the forum state. *Pico v. Weston*,

8    780 F.3d 1206, 1214 (9th Cir. 2015). A defendant can expressly aim his actions at a state without

9    committing those acts inside state lines. *Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir.2002).

10   The relevant question is whether the defendant's acts "were performed for the very purpose of

11   having their consequences felt in the forum state." *Id*. at 1112 (internal quotation marks and

12   citation omitted).

13           Expeditors Washington's allegations illustrate that the express aim of Mr. Cadena's

14   alleged intentional acts was Mexico City, where he was acting in his capacity as an employee of

15   Expeditors Mexico and shareholder of AASCE, which are both Mexican entities headquartered

16   in Mexico City. Dkt. 1 ¶¶ 7–9; 26–30 (*i.e.*, "[Mr.] Cadena . . . fraudulently invoiced higher

17   amounts for services rendered [by AASCE] to Expeditors Mexico"; Mr. Cadena intended to and

18   did misappropriate funds belonging to Expeditors Mexico; Mr. Cadena he failed to repay the

19   money "rightfully belonging to Expeditors Mexico.")

20           Expeditors Washington alleges that Mr. Cadena's letter to Fidelity Services (in which he

21   sought to exercise stock options under the ESPP), gives rise to specific jurisdiction. Dkt. 1 ¶¶ 4,

22   9. First, there is no allegation that Mr. Cadena is fraudulently seeking to exercise stock options.

23   Rather, Expeditors Washington argues that Mr. Cadena is not entitled to exercise his stock

REPORT AND RECOMMENDATION - 12

1    options because he committed fraud and theft against Expeditors Mexico. By attempting to

2    exercise his options, Mr. Cadena was not expressly aiming intentional and wrongful acts at the

3    forum state. Fidelity Services is headquartered in Massachusetts, not in Washington. In addition,

4    the transmittal of a letter informing the plaintiff (or another) of an intent to enforce the terms of a

5    contract does not give rise to the necessary minimum contacts. *See Miller v. Head USA, Inc*.,

6    2016 WL 10570274, at *5 n.2 (C.D. Cal. Dec. 16, 2016) (citing *Yahoo! Inc. v. La Ligue Contre*

7    *Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) (en banc)).

8         Mr. Cadena sought to exercise his stock options, which he earned while employed by

9    Expeditors Mexico in Mexico City, by sending a letter to the company managing the stock

10   proceeds. Thus, there is nothing to indicate that, by seeking to redeem his stock options, Mr.

11   Cadena intended that the consequences be felt in Washington.

12        Expeditors Washington also alleged in its Complaint that Mr. Cadena's hiring of counsel

13   in Washington is sufficient to establish jurisdiction (*see* Dkt. 1, ¶ 4), but it provides no authority

14   for this position. More importantly, there is nothing to indicate that hiring counsel in Washington

15   gave rise to any of Expeditors Washington's claims.

16        Expeditors Washington has not met its burden to show that Mr. Cadena's intentional acts

17   were expressly aimed at Washington.

18                    (iii)    Harm Likely to Be Suffered in Washington

19        Finally, a defendant's actions must cause harm "likely to be suffered" in Washington.

20   *Picot*, 780 F.3d at 1214. Economic harm to a corporation can be suffered "both where the bad

21   acts occurred and where the corporation has its principal place of business." *Mavrix Photo, Inc*.,

22   647 F.3d at 1231 (9th Cir.2011) (quoting *Dole Food Co*., 303 F.3d at 1113).

23

REPORT AND RECOMMENDATION - 13

1         Here, Expeditors Mexico is the alleged injured party, not Expeditors Washington. The

2   alleged misconduct involves Mr. Cadena improperly invoicing Expeditors Mexico—not

3   Expeditors Washington—for services AASCE rendered in Mexico City. Dkt. 1 ¶ 9. *See also id.* ¶

4   22 (arguing that the "funds rightfully belong[] to Expeditors Mexico"). As Expeditors Mexico is

5   both incorporated and headquartered in Mexico City (Dkt. 25, Harms Decl. Ex. A (Expeditors

6   Mexico Corp. Deed) at 2), the economic injury, if any, occurred there, not Washington. *See Dole*

7   *Food*, 303 F.3d at 1113; *see also Oertel v. Bradford Trust Co*., 33 Wn. App. 331, 337, 655 P.2d

8   1165 (1982) (conversion that occurred in New York but caused a financial loss in Washington

9   did not establish personal jurisdiction over the defendant in Washington).

10        Even assuming that Expeditors Washington might feel a financial effect due to alleged

11  tortious activity in Mexico, this is largely irrelevant because "the commission of a tortious act" in

12  Washington is not established merely by showing that a resident of Washington has suffered a

13  loss. *International Business Solutions Marketing & Public Relations Co., Ltd. v. University of*

14  *Findlay*, 2015 WL 3948839, *3 (W.D. Wash. June 26, 2015) (citing *Oertel*, 33 Wash.App. at

15  336). As explained by the Ninth Circuit, "something more" is needed in addition to a mere

16  foreseeable effect – in other words, "precisely, whether [Mr. Cadena's] conduct was expressly

17  aimed at [Washington]…." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006).

18        Expeditors Washington has not met its burden to show that Mr. Cadena's intentional acts

19  were likely to cause harm in Washington.

20        (b)   <u>Claims Arising from Forum-Related Activities</u>

21        The second prong of this analysis is effectively a "but for" test; there must be pleaded

22  facts showing that Expeditors Washington would not have suffered the alleged injury "but for"

23  Mr. Cadena's forum-related activities. *See Shute v. Carnival Cruise Line*s, 897 F.2d 377, 385

(9th Cir. 1990), *rev'd on other grounds, Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585

(1991); *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1051 n.7 (9th Cir. 1997) (noting that

even after the Supreme Court's decision in *Shute*, "the 'but for' test is still employed in

determining whether a plaintiff's injuries arose out of the defendant's forum-related activities.").

Expeditors Washington alleges it was harmed by Mr. Cadena's conduct in Mexico – not

that it was harmed by Mr. Cadena's conduct in Washington. For example, in support of its

conversion claim, Expeditors Washington alleges that "Cadena intended to and did deprive

Expeditors Mexico of its property" and that he "misappropriate[d] Expeditor Mexico's funds."

Dkt. 1, ¶ 26.

All of Expeditors Washington's claims arise from Mr. Cadena's actions in Mexico.

Expeditors Washington's attempts to argue otherwise are not persuasive. It cannot be reasonably

disputed that the hiring of Washington counsel to assist Mr. Cadena in exercising his stock

options and to assist him in this dispute, did not give rise to any of Expeditors Washington's

claims. In fact, Expeditors Washington appears to concede that it has failed to allege facts

sufficient to support an independent personal jurisdictional basis for its conversion and

constructive trust claims. Dkt. 26.

(c)    Fair Play and Substantial Justice

The final prong of the Ninth Circuit's three-prong test in determining whether to exercise

specific jurisdiction, is whether the exercise of jurisdiction comports with fair play and

substantial justice, *i.e.* it must be reasonable. *Schwarzenegger*, 374 F.3d at 800. Because

Expeditors Washington has failed to carry its burden of alleging the requisite purposeful

direction and direct nexus between Mr. Cadena's forum-related activity and the causes of action,

the Court need not address whether an exercise of jurisdiction would violate traditional notions

REPORT AND RECOMMENDATION - 15

1  of fair play and substantial justice and therefore be unreasonable.[3] *See Pebble Beach,* 453 F.3d

2  at 1155 (citing factors set out by the Supreme Court in *Burger King Corp. v. Rudzewicz*, 471

3  U.S. 462, 476–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

4        Nevertheless, even a brief view of the factors in relation to this case illustrates that the

5  exercise of jurisdiction in this case would be unreasonable and inefficient. *See Harris Rutsky &*

6  *Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132–33 (9th Cir. 2003) (Requiring an

7  alien defendant to defend himself in a foreign legal system is enough of a burden to decline

8  jurisdiction as unreasonable, not to mention inefficient and wholly impractical.). Many potential

9  witnesses are domiciled and reside in Mexico City and are native Spanish speakers with limited

10 English capabilities. The two entities intertwined in this dispute (AASCE and Expeditors

11 Mexico) are headquartered and incorporated in Mexico City. The termination of Mr. Cadena's

12 employment was based on Mexican employment law. Much, if not all relevant evidence, is in

13 Mexico and is in Spanish. In addition, Mr. Cadena and many witnesses may be unable to travel

14 to the state of Washington due to COVID-related travel restrictions and/or the lack of travel

15 Visas. *See* Dkt. 24, Cadena Decl. ¶ 18.

16       The Court must also consider sovereignty issues raised by exercising personal

17 jurisdiction over a defendant from a foreign country. *See Harris Rutsky*, 328 F.3d at 1133

18 ("Litigation against an alien defendant creates a higher jurisdictional barrier than litigation

19 against a citizen from a sister state because important sovereignty concerns exist.") (citations

20

21 [3] The seven factors are "(1) the extent of the defendants' purposeful interjection into the forum

22 state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of
   conflict with the sovereignty of the defendants' state; (4) the forum state's interest in

23 adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the
   importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the
   existence of an alternative forum." *Harris Rutsky*, 328 F.3d at 1132.

1    omitted). As the Supreme Court has explained, "[g]reat care and reserve should be exercised

2    when extending . . . notions of personal jurisdiction into the international field." *Asashi Metal*

3    *Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 115 (1987) (citation omitted). Expeditors

4    Washington, has at least seventy-six subsidiaries located around the world, in at least sixty-three

5    countries, including China, Malaysia, Bangladesh, or Oman. Dkt. 25, Harms Decl. Ex. D

6    (Expeditors Washington Form 10-K) at Ex. 21.1. Permitting Expeditors Washington to hale

7    employees of its subsidiaries around the world to the state of Washington, without an appropriate

8    showing that such employees purposefully availed themselves of the benefits of doing business

9    in Washington or that an alternative forum is unavailable, would violate traditional notions of

10   fair play and substantial justice. *See*, *e.g.*, *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir.

11   1991) ("Roth has not shown that he could not litigate in Spain or Mexico. Doubtless he would

12   prefer not to, but that is not the test.").

13         For these reasons, the undersigned concludes that this Court lacks personal jurisdiction

14   over Mr. Cadena as to Expeditors Washington's conversion and constructive trust claims. The

15   Court turns next to whether the forum selection clause in the Stock Option Agreements provides

16   the necessary personal jurisdiction over Expeditors Washington's declaratory judgment claim

17   and if so, whether this Court may exercise pendent jurisdiction over the conversion and

18   constructive trust claims, and finally, whether the declaratory judgment claim should be

19   dismissed for lack of standing.

20   B.    Forum Selection Clause – Declaratory Judgment Claim

21         In its declaratory judgment claim, Expeditors Washington alleges that it is entitled to a

22   judgment holding that (a) Mr. Cadena's fraud and misconduct over time constitute violations of

23   the terms of his employment with Expeditors Mexico, a subsidiary of Expeditors, including but

not limited to the Expeditors Code of Business Conduct; (b) Mr. Cadena's fraud and misconduct, including his continued wrongful possession of funds rightfully belonging to Expeditors Mexico, prevent him from having authority or standing to (i) receive stock options in the first instance, and/or (ii) exercise stock options and obtain Expeditors common stock; and (c) Mr. Cadena's purported exercise of stock options is null and void. Dkt. 1, ¶ 22.

At issue are stock option grants to Mr. Cadena in 2014, 2015, and 2016. Dkt. 27, Declaration of Kevin Osborn, ¶¶ 4, 5, 6 and Exs. B, C, and D. The Stock Option Agreements related to each grant provides that the agreements "shall be construed and enforced under the laws of the State of Washington" and that any action brought with respect to the agreements, shall be brought in a court in King County, Washington. *Id.*, Ex. B (at ¶ 15), Ex. C (at ¶ 15), and Ex. D (at ¶ 15).

In diversity cases, federal law governs the analysis of the effect and scope of forum selection clauses. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). In *Bremen*, the Supreme Court held that a forum selection clause is presumptively valid and should not be set aside unless the party challenging the clause "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." 407 U.S. at 15, 92 S.Ct. 1907. A contractual forum selection clause may "be 'unreasonable' and unenforceable if the chosen forum is seriously inconvenient for the trial of the action." *Id*. at 16, 92 S.Ct. 1907. "In such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id*. at 18, 92 S.Ct. 1907.

1    Mr. Cadena persuasively argues that trial in Washington will be gravely difficult and

2    inconvenient at this time. Since the World Health Organization declared COVID-19, the disease

3    caused by a novel strain of coronavirus (SARS-CoV-2), to be a global pandemic on March 11,

4    2020, many countries, including the United States, have closed their borders to foreign nationals

5    from certain countries. Mr. Cadena, a Mexican citizen and resident, would be required to travel

6    from Mexico City to Seattle to defend himself against Expeditor Washington's claims. Dkt. 24,

7    Cadena Decl., ¶ 17. At the very least, COVID-19 renders this type of travel dangerous to Mr.

8    Cadena's health, if not impossible. *See Murphy v. Schneider Nat'l, Inc*., 362 F.3d 1133 (9th Cir.

9    2004) (holding a forum selection clause to be unenforceable because the plaintiff was incapable

10    of traveling to the forum state). Furthermore, the witnesses that Mr. Cadena plans to call are also

11    located in Mexico. Dkt. 24, Cadena Decl., ¶ 18. As such, these witnesses would also have to risk

12    exposure to COVID-19 to provide testimony on Mr. Cadena's behalf.

13    Because it is undisputed that the risk of traveling during this global health crisis precludes

14    Mr. Cadena from defending himself in this Court, the second *Bremen* exception to enforcing

15    forum selection clauses applies. COVID-19 has created an unprecedented and exceptional

16    situation that renders the forum selection clause unenforceable at this time. However, the Court

17    must also consider that while trial in this case (as with practically all civil cases presently in this

18    District) will be delayed, it will be rescheduled when it is safe to do so. Before turning to

19    whether Expeditor Washington lacks standing to pursue a declaratory judgment claim, the Court

20    reviews whether the Court should exercise pendent jurisdiction in the event the declaratory

21    judgment claim proceeds.

22    C.    Pendent Jurisdiction

23    Assuming *arguendo* that Expeditors Washington may pursue its declaratory judgment

1    claim, the undersigned concludes that it would be illogical to allow Expeditors Washington to

2    use the forum selection clause in the Stock Option Agreements to exert personal jurisdiction over

3    Mr. Cadena for claims falling outside the scope of the forum selection clause.

4         Unlike its declaratory judgment claim, Expeditors Washington does not allege an

5    independent personal jurisdiction basis for these two claims. Instead, it argues that its conversion

6    and constructive trust claims should be allowed to piggy-back onto the specific personal

7    jurisdiction created by the forum selection clause contained in the Stock Option Agreements.

8    However, specific personal jurisdiction is a claim-specific inquiry, and due process limitations

9    on personal jurisdiction prohibits the exercise of pendent personal jurisdiction, at least for courts

10   exercising diversity jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of California, San*

11   *Francisco Cty.*, 137 S. Ct. 1773 (2017); *See Sloan v. Gen. Motors LLC*, 2019 WL 6612221, at *8

12   (N.D. Cal. Dec. 5, 2019) ("[N]early every court considering the issue has concluded pendent

13   party jurisdiction cannot be exercised by a federal court sitting in diversity") (and cases cited).

14        Thus, "[p]endent jurisdiction exists where there is a sufficiently substantial federal claim

15   to confer federal jurisdiction, and a common nucleus of operative fact between the state and

16   federal claims." *Gilder v. PGA Tour, Inc*., 936 F.2d 417, 421 (9th Cir. 1991) (emphasis added).

17   Additionally, the exercise of personal pendent jurisdiction in a particular case is within the

18   discretion of the district court and fairness to the litigants should be considered. *Action*

19   *Embroidery Corp. v. Atl. Embroidery, Inc*., 368 F.3d 1174, 1181 (9th Cir. 2004).

20        Because personal jurisdiction based on a forum selection clause involves some form of

21   consent by the parties, it would be illogical and unfair to extend personal jurisdiction over claims

22   that clearly fall outside its scope. *See Naegele v. Albers*, 110 F. Supp. 3d 126, 154 (D.D.C.

23   2015) (declining to exercise pendent personal jurisdiction, based on forum selection clause in

1    contract, as to claims outside the scope of that clause), *aff'd*, 672 Fed. Appx. 25 (D.C. Cir. 2016);

2    *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) (citing 5B

3    CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

4    PROCEDURE: CIVIL 3d § 1351, at 299 n.30 (2004) ("There is no such thing as supplemental

5    specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must

6    independently exist for each claim and the existence of personal jurisdiction for one claim will

7    not provide the basis for another claim.")); *see also Edwards v. Schwartz*, 378 F. Supp. 3d 468,

8    491 (W.D. Va. 2019) ("[T]he court cannot, having determined that personal jurisdiction exists

9    over a defendant with respect to one claim, use that claim to exert personal jurisdiction over the

10    same defendant with respect to other claims that do not otherwise support such jurisdiction.").

11       The forum selection clause in the Stock Option Agreements provides no basis for haling

12    Mr. Cadena into court on the conversion and constructive trust claims, which stem from his

13    alleged fraud and theft in Mexico, and not on his request to exercise his stock options. Haling

14    Mr. Cadena into court in Washington on these counts, based only on his conduct in Mexico,

15    would likely "'offend traditional notions of fair play and substantial justice.'" *GTE New Media*

16    *Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000), *quoting Int'l Shoe*, 326 U.S. at

17    316, 66 S.Ct. 154.

18       Thus, in the event the Court concludes that Expeditors Washington may proceed with its

19    declaratory judgment claim, the undersigned recommends that the Court decline to exercise

20    pendent personal jurisdiction, based on the forum selection clause, as to the conversion and

21    constructive trust claims. As explained below, the undersigned concludes that Expeditors

22    Washington lacks standing to request declaratory judgment on whether Mr. Cadena's conduct

23    and the termination of his employment by Expeditors Mexico strips him of his ability to exercise

1    his stock options, and therefore, the claim may be dismissed for lack of standing.

2    D.    <u>Standing – Declaratory Judgment</u>

3         Article III of the Constitution limits the jurisdiction of federal courts to cases and

4    controversies. See U.S. Const. art. III, § 2. For a legal dispute to qualify as a genuine case or

5    controversy, a plaintiff must have standing to sue, which requires it to "present an injury that is

6    concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged

7    behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554

8    U.S. 724, 733 (2008). "The party invoking federal jurisdiction bears the burden of establishing

9    these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

10    Standing is not dispensed in gross; rather, a plaintiff must demonstrate standing for each claim it

11    seeks to advance and for each form of relief that is sought. *See Town of Chester v. Laroe Estates,*

12    *Inc.*, 137 S. Ct. 1645, 1650 (2017) (citations omitted). A lack of Article III standing is a

13    jurisdictional issue properly raised in a Rule 12 motion. *See White v. Lee*, 227 F.3d 1214, 1242

14    (9th Cir. 2000).

15         Because declaratory judgment acts are procedural in nature and do not affect underlying

16    substantive rights, the *Erie* doctrine (See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938))

17    mandates that federal courts sitting in diversity apply the federal Declaratory Judgment Act, 28

18    U.S.C. § 2201, to a plaintiff's request for declaratory relief, which provides a federal court with

19    discretion to exercise its jurisdiction and hear declaratory judgment actions. *Gov't Employees*

20    *Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (citing *Public Serv. Comm'n of Utah v.*

21    *Wycoff Co.*, 344 U.S. 237, 250 (1952) (J. Reed, concurring)).

22         When declaratory relief is sought, "[t]he complainant must allege an injury to himself

23    that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual

1   or imminent, not conjectural or hypothetical." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)

2   (citations and internal quotations omitted). A declaratory judgment will not redress a plaintiff's

3   injuries if it would amount only to a gratuitous statement with no legal effect on any future

4   controversy. *See Mayfield v. United States*, 599 F.3d 964, 972 (9th Cir. 2010).

5          Expeditors Washington seeks a judgment declaring (1) Mr. Cadena violated the terms of

6   his employment with Expeditors Mexico (Dkt. 1, ¶ 22(a)), and (2) the parties rights and

7   obligations under the ESPP, including whether Mr. Cadena has standing and authority to receive

8   and exercise stock options subject to the ESPP (*id.* ¶¶ 21, 22(b)-(c)).

9          (1)    <u>Violation of Terms of Employment</u>

10         Expeditors Washington is requesting that the Court declare that the alleged "fraud and

11  misconduct over time constitute violations of the terms of [Mr. Cadena's] employment with

12  Expeditors Mexico, a subsidiary of Expeditors [Washington] . . . ." Dkt. 1, ¶ 22(a).

13         However, Expeditors Washington has not submitted admissible evidence that it is either a

14  party to or an assignee of the employment agreement between Expeditors Mexico and Mr.

15  Cadena. Dkt. #26 (Opp.) at 13:10–21 & n.11. Expeditors Washington has also failed to plead

16  facts showing that an actual justiciable conflict exists between it and Mr. Cadena as to whether

17  Mr. Cadena violated his terms of employment with Expeditors Mexico. *See Douglas v. Don King*

18  *Prods., Inc.*, 736 F. Supp. 223, 224 (D. Nev. 1990) ("The only parties with a legally recognizable

19  personal stake in this matter are the parties to the contract[.]"). *See also Goldberg v. Valve Corp.*

20  *of Am.*, 233 N.E.2d 85, 89-90 (Ill. App. Ct. 1967) (holding that employee did not have standing

21  for a judgment declaring rights under an employment contract after the employment relationship

22  had been severed because he did not show an "actual and present controversy in its true sense").

23

1   Expeditors Washington also fails to identify any threat of actual or imminent injury to

2   Expeditors Washington that relates to whether Mr. Cadena violated the terms of his employment

3   with Expeditors Mexico. Expeditors Washington contends that a declaratory judgment

4   concerning Mr. Cadena's employment will have a legal effect because "[s]uch manifest

5   disloyalty disqualifies Cadena from being able to exercise his options in accordance with the

6   relevant Stock Option Agreements and, thus, receive economic benefit in the form of Expeditors

7   common stock." Dkt. 26, p. 13 n.11. However, Expeditors Washington has not identified any

8   contract provision or legal theory that disqualifies Mr. Cadena from exercising his vested stock

9   options due to the alleged "manifest disloyalty." *See* Dkt. 26, p. 12:14–14:2 & n.11. In addition,

10  Mr. Cadena sued Expeditors Mexico in Mexican Labor Court with regard to the termination of

11  his employment by Expeditors Mexico and that suit is pending. *See Armando Cadena Santillana*

12  *v. Expeditors International De Mexico, S.A. de C.V.*, No. 53/2020 (Special Labor Board No. 15,

13  Mexico City). Thus, it is likely that the Mexican Labor Court will decide these same issues. *See*

14  WRIGHT & MILLER, 10B FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2759 (4th ed.) ("The courts

15  properly decline relief if the declaratory-judgment procedure, and the federal forum, is being

16  used for 'procedural fencing' or 'in a race for res judicata.'"); *cf. Mueller Sys., LLC v. Robert*

17  *Teti & Itet Corp*., 199 F. Supp. 3d 270, 282 (D. Mass. 2016) (district court refusing to exercise

18  jurisdiction over a declaratory judgment action because of a pending Canadian case that would

19  decide the same issue—"In addition to trying to control the forum, plaintiff appears to be trying

20  to pre-empt a Canadian judgment.").

21          Based on the foregoing, the undersigned concludes that declaratory relief concerning the

22  terms of Mr. Cadena's employment with Expeditors Mexico will amount to a gratuitous

23  statement with no legal effect on any actual or imminent controversy before this Court.

(2)    <u>Rights of Parties Under the ESPP</u>

Expeditors Washington seeks a judgment declaring the rights and obligations of the parties under the ESPP and declaring that Mr. Cadena had no authority to receive or exercise stock options. Dkt. 1 ¶¶ 21–22. Mr. Cadena argues that a declaratory judgment concerning the ESPP is improper because independent decisionmakers sever the causal chain between the alleged threat of harm, if any, and possibility of redress. Dkt. 23, at 20:13-21:17 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413–14 (2013) (A party will not have standing to pursue a declaratory judgment where the court would have to rely on "speculation" or "guesswork as to how independent decisionmakers will exercise their judgment."))

Mr. Cadena contends that Fidelity Services, acting as administrator of the ESPP, and Fidelity Trust Co., acting as trustee of the ESPP Trust – neither of whom are parties to this lawsuit – are the independent decisionmakers that sever the causal chain between the alleged threat of harm and possibility of redress. In response, Expeditors Washington contends that "Fidelity [Services] has no dog in this fight." Dkt. 26 at 13 n.11. Mr. Cadena points to language in the Stock Option Agreements stating that he has the right to exercise his vested options either through Expeditors Washington or, "by complying with any other payment mechanism which [Fidelity Services] may approve at the time of exercise." Dkt. 27, Osborn Decl., Exs. B–D § 10. Mr. Cadena requested an exercise of his stock options "[b]y letter to Fidelity." Dkt. 1, ¶ 13; see also Dkt. 27, Osborn Decl., Ex. F.

"Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Wash.*, 759 F.2d 1353, 1357 (9th Cir. 1985). Here, the Court is being asked to determine whether Mr. Cadena's

letter to Fidelity Services was an effective exercise of his options and then speculate on how the

Fidelity entities will exercise their judgment on his request. The Court cannot resolve the

controversies related to the ESPP and Stock Plan Proceeds because the Fidelity entities are not

parties to this case. Thus, a declaration would neither settle the legal relations at issue nor afford

relief from the uncertainty faced by the parties. *See Delno v. Market St. R. Co*., 124 F.2d 965,

968–69 (9th Cir. 1942) (affirming dismissal of declaratory relief claim where such relief would

not finally settle the issue because absent parties would have the right to litigate the same

question); *Clapper*, 568 U.S. at 413-14 (request for declaratory relief declaratory judgment claim

where Court has to rely on "speculation" or "guesswork as to how independent decisionmakers

will exercise their judgment. )

Accordingly, this Expeditors Washington lacks standing to pursue this claim for

declaratory relief and the undersigned recommends that Mr. Cadena's motion to dismiss this

claim be granted.

V.  CONCLUSION

Because Expeditors Washington has not shown that the Long Arm Statute provides a

basis for the exercise of personal jurisdiction over Mr. Cadena as to the conversion and

constructive trust claims, the undersigned recommends that the Court dismiss these claims for

lack of personal jurisdiction. Because Expeditors Washington lacks standing, the undersigned

recommends that the Court dismiss Expeditors Washington's declaratory judgment claim. In the

event the Court determines that Expeditors Washington may pursue its declaratory judgment

claim, the undersigned recommends that the Court decline to exercise pendent jurisdiction over

its conversion and constructive trust claims.

<u>OBJECTIONS AND APPEAL</u>

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **November 16, 2020**. The Clerk should note the matter for **November 18, 2020,** as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed seven (7) pages. The failure to timely object may affect the right to appeal.

DATED this 26th day of October, 2020.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 27