UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EXPEDITORS INTERNATIONAL OF
WASHINGTON INC,

                    Plaintiff,

        v.

ARMANDO CADENA SANTILLANA,

                    Defendant.

CASE NO. 2:20-cv-00349-LK-BAT

**REPORT AND
RECOMMENDATION**

Defendant Armando Cadena Santillana ("Cadena") brings a motion to dismiss Plaintiff

Expeditor's International of Washington Inc.'s ("Expeditors Washington") First Amended

Complaint ("FAC") (Dkt. 39) pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2),

and 12(b)(6). Dkt. 42. The undersigned recommends that the motion be granted.

## I. <u>BACKGROUND</u>

A.    <u>Procedural Background</u>

1.    <u>Lawsuit in Mexico</u> – On January 6, 2020, Plaintiff Cadena filed suit against

Expeditors Mexico in Mexican Labor Court for violations of Mexican law. *See Armando Cadena*

*Santillana v. Expeditors International De Mexico, S.A. de C.V.*, No. 53/2020 (Special Labor

Board No. 15, Mexico City).

2.    <u>Interpleader Action</u> –On February 27, 2020, Wells Fargo, N.A. ("Wells Fargo")

filed a Complaint for Interpleader, naming Mr. Cadena and Expeditors Washington as

defendants. *See Wells Fargo Bank, N.A. v Armando Cadena et al.*, W.D.Wash. No. 2:20-cv-

00317-RAJ-BAT (the "Interpleader Action"). On April 15, 2020, the Court entered a Stipulation and Order for Interpleader of Funds and Dismissal (the "Interpleader Order") authorizing Wells Fargo, N.A. to deposit certain funds in the Registry of the Court and dismissing Wells Fargo with prejudice. Dkt. 13. Pursuant to the Interpleader Order, Wells Fargo deposited the sum of $1,109,437.23 (the "Interpleaded Funds") into the Court Registry on April 30, 2020. On August 31, 2020, the Court granted Expeditors Washington's Motion to Stay the Interpleader Action "until such time as the rightful owner of the Interpleaded Funds is determined." Dkt. 21.

3. <u>This Case</u> – On March 3, 2020, Expeditors Washington filed the Complaint in this case asserting claims of (1) conversion (Dkt. 1, ¶¶ 23–27); (2) constructive trust over the Wells Fargo Account and Expeditors of Washington common stock subject to the Expeditors Employee Stock Purchase Plan (the "ESPP") (*id*. ¶¶ 28–31); and (3) judgment declaring (a) the rights and obligations of the parties under the ESPP, including whether Mr. Cadena has a right to the Stock Plan Proceeds or to exercise stock options under the Stock Option Agreements, and (b) that Mr. Cadena breached the terms of his employment with Expeditors Mexico by violating the Code of Business Conduct (*id*. ¶¶ 18–22).

Underlying both actions are claims that Mr. Cadena, a former employee of Expeditors International de Mexico S.A. de C.V. ("Expeditors Mexico") engaged in financial misconduct. The misconduct alleged is Mr. Cardena's submission of fraudulent invoices for services rendered to Expeditors Mexico by Agentes Aduanales Al Servicio Del Comercio Exterior, SA.DE C.V. ("AASCE"), a company in which Mr. Cadena is a shareholder. Expeditors Washington claims that the amounts fraudulently invoiced to Expeditors Mexico exceeds $2.85 million. *See* Dkt. 1 (Complaint in Expeditors Action). The Interpleader Action was initiated by Wells Fargo after Expeditors Washington alerted Wells Fargo to a wire transfer from Defendant Cadena's personal

account in a Mexican bank to a Wells Fargo account, with a balance of over $1 million. *Id*.

On September 10, 2020, Mr. Cadena moved to dismiss the Complaint. Dkt. 23. In opposition, Expeditors Washington argued, among other things, that the forum-selection clause contained in the Stock Option Agreements is enforceable. *See* Dkt. 26.

On October 26, 2020, this Court concluded that (i) this Court lacks personal jurisdiction over Mr. Cadena as to Expeditors Washington's conversion and constructive trust claims; (ii) notwithstanding a forum-selection clause contained in the Stock Option Agreement, this Court lacks personal jurisdiction over Mr. Cadena as to the declaratory judgment claim; (iii) Expeditors Washington lacks standing to pursue its declaratory judgment claim; and (iv) the Court should decline to exercise pendent personal jurisdiction over the conversion and constructive trust claims in the event it determined that Expeditors Washington has standing to pursue the declaratory judgment claim. Dkt. 31 (Report and Recommendation ("R&R).

On November 16, 2020, Expeditors Washington filed its Objection to the R&R, arguing that this "Court should decline the R&R and order that this litigation proceed on Expeditors' claim for declaratory judgment as to the parties' rights and obligations under the Stock Option Agreements." Dkt. 32 at 4. Expeditors Washington did not challenge the R&R's finding that (i) this Court lacks personal jurisdiction over Mr. Cadena for its conversion or constructive trust claims, nor the finding that (ii) Expeditors Washington lacks standing to pursue its declaratory judgment claim pertaining to Mr. Cadena's terms of employment with Expeditors Mexico.

Prior to the District Court's adoption of the RR, Expeditors Washington filed a motion for leave to file a First Amended Complaint. Dkt. 34. Plaintiff Cadena opposed the motion on the grounds of futility, undue delay, and ongoing financial prejudice. Dkt. 36. On August 17, 2021, the District Court adopted the R&R in full, with leave to amend. Dkt. 38. Plaintiff's First

1   Amended Complaint ("FAC") was filed on September 7, 2021. Dkt. 39.

2   B.      Allegations of Expeditors Washington in FAC (Dkt. 39)

3           Expeditors Washington is a global logistics and freight-forwarding company

4   headquartered in Seattle, Washington. Dkt. 39, FAC, ¶ 6. Cadena was previously employed in

5   the accounting department of Expeditors' wholly-owned subsidiary, Expeditors Mexico.[1] *Id.*, ¶

6   7. Cadena is a resident of Mexico. *Id.*, ¶ 2.

7           Expeditors Washington has numerous subsidiaries around the world and the company

8   conducts itself as a single integrated organization with consistent standards, policies, and

9   regulations. Expeditors Washington has an established Code of Business Conduct that applies to

10  every employee, director, and officer worldwide. Employees of Expeditors Washington and its

11  included subsidiaries are provided stock option grants for Expeditors Washington common stock.

12  Additionally, employees of Expeditors Washington and its included subsidiaries are permitted to

13  purchase Expeditor Washington's stock at a discount under an Employee Stock Purchase Plan

14  ("ESPP"). *Id.*, ¶ 8 n. 1. Management and reporting relationships also span both Expeditors

15  Washington and its subsidiaries. Cadena worked in Mexico and reported (dotted line) to Bradley

16  Powell, Expeditors Washington's CFO, who is based in Seattle. *Id.*, ¶ 9.

17          Profits generated by the Expeditors Mexico subsidiary are declared and paid to

18  Expeditors Washington on an annual basis; Expeditors Mexico declared and paid dividends for

19  every year 2011 – 2020. *Id.*, ¶ 10.

20          During his employment with Expeditors Mexico, Cadena received certain stock option

21  grants in 2014, 2015, and 2016 for the purchase of Expeditors Washington's common stock. *Id.*,

22

23  _____

[1] Expeditors International of Washington is referred to herein as "Expeditors Washington" and its subsidiary Expeditors International de Mexico S.A. de C.V. is referred to herein as "Expeditors Mexico".

¶¶ 11-12 (the "Stock Options"). The process for exercising the Stock Options is as follows:

> Each exercise of this Option shall be by means of written notice delivered to the Company at its principal executive office in Seattle, Washington, specifying the number of shares of Common Stock to be purchased. Upon each exercise of this Option, the full exercise price for the Common Stock to be purchased together with the amount necessary for the Company to satisfy its withholding obligation imposed by the Internal Revenue Code of 1986, if any, shall be paid to the Company by wire transfer, except to the extent another method of payment is permitted by the Plan Administrator. . . . The exercise date of this Option shall be the date of the Company's receipt of the full exercise price for the Common Stock to be purchased.

*Id.,* ¶ 13. Each Stock Option Agreement between Expeditors and Cadena also provides:

> This Agreement and the [applicable] Plan set forth the entire understanding between the Company and the Optionee with respect to the Option and shall be construed and enforced under the laws of the State of Washington. Any action brought with respect to this Agreement or the Plan shall be brought in a court in King County, Washington.

*Id.*, ¶ 14.

In early November 2019, Expeditors Washington discovered that Cadena, in concert with several other Expeditors Mexico employees, had engaged in material financial misconduct over several years. *Id.*, ¶ 15. Among other things, Cadena and his co-conspirators fraudulently invoiced higher amounts for services rendered to Expeditors Mexico and then transferred the overprice to accounts for which the co-conspirators and/or their family members were personal beneficiaries. They also caused invoices to be issued for services never rendered and the resulting payments were then transferred to personal bank accounts. *Id.*, ¶ 16. Cadena and his co-conspirators overrode segregation of duties controls in the payment process to initiate and authorize fraudulent payments—from (a) AASCE, a customs brokerage service provider for Expeditors Mexico (of which Cadena is a shareholder); and (b) Expeditors Mexico—to their own personal bank accounts and, on occasion, the bank accounts of family members. *Id.*, ¶ 17. The total amount of money embezzled exceeded $2.85 million. *Id.*, ¶ 19.

REPORT AND RECOMMENDATION - 5

1      In a handwritten confession, Cadena admitted that he and his co-conspirators "have been

2 trans[fer]ring funds from AASCE ... to an account where we are the personal beneficiaries[,]"

3 and "[t]he funds originat[ed]" from an overprice added to AASCE invoices to Expeditors

4 Mexico. ¶ 21, Exhibit A. Cadena also stated that he was "willing to return the funds as soon as

5 possible." *Id*. He has not done so. *Id*., ¶ 31.

6      Cadena's employment with Expeditors Mexico was terminated with cause on

7 December 4, 2019. *Id.*, ¶ 22. On January 29, 2020, Cadena provided written notice to Expeditors

8 International of Washington, Inc. in Seattle, that he was exercising the 5,600 options granted to

9 him under the Stock Option Agreements dated May 7, 2014, May 21, 2015, and May 3, 2016

10 (the "Stock Option Agreements"). *Id.*, ¶ 23. Fidelity Stock Plan Services provides administrative

11 and record keeping services for the Expeditors' Stock Option Plans. Cadena also sent a letter to

12 Fidelity dated January 29, 2020, which stated that he sought to effect a "cashless exercise" of the

13 5,600 options for Expeditors common stock and that he had retained Washington state counsel to

14 assist him. *Id.*, at n.2.

15      On January 30, 2020, Matt Harrington of Stokes Lawrence, P.S., acting on behalf of

16 Cadena, had a telephone discussion with Kevin Osborn, Vice President, Associate General

17 Counsel and Chief Ethics & Compliance Officer of Expeditors Washington. Osborn advised that

18 Cadena was not entitled to exercise options and receive stock from Expeditors Washington given

19 Cadena's fraud, financial misconduct, and theft. *Id.*, ¶ 24.

20      On January 31, 2020, Harrington wrote to Osborn and asserted that despite "collateral

21 disputes arising from his employment", Cadena was nevertheless entitled to exercise stock

22 options and obtain Expeditors common stock. *Id.*, ¶ 25. On February 5, 2020, Fidelity Stock Plan

23 Services wrote to Cadena advising, in relevant part, as follows:

1
2
3
4
5

> Fidelity Stock Plan Services provides administrative and record keeping services for the Expeditors International of Washington, Inc. Stock Option Plan that includes for years 2014, 2015, and 2016 (the "Plans"). Stock options that are awarded to employees pursuant to these Plans are subject to the terms and conditions of the associated Stock Option plan documents and agreements. Fidelity, as a directed recordkeeper, follows the instruction of Expeditors International of Washington, Inc. with regard to activities allowed under the Plans.

*Id.*, ¶ 26.

6
7
8
9
10
11
12

Cadena opened and previously maintained a bank account at Wells Fargo Bank, N.A. (Acct. #xxxxxx1567) with a balance of more than $1,000,000.00, which funds are believed to have come from the money that Cadena embezzled from Expeditors Mexico. Wells Fargo deposited the sum of $1,109,437.23 into the Court Registry on April 30, 2020. *See Wells Fargo Bank, N.A. v. Armando Cadena and Expeditors International of Washington, Inc*., W.D.Wash. No. 2:20-cv-00317-RAJ-BAT (the "Interpleader Action"). *Id.*, ¶ 27.

13
14
15
16
17
18
19

Cadena also maintains a stock plan account with Fidelity Investments that contains shares of Expeditors International of Washington, Inc. common stock and cash reserves with an estimated value of more than $1 million (the "Fidelity Account"). *Id.*, ¶ 30. On information and belief, Cadena obtained the Expeditors Washington stock and related cash reserves in the Fidelity Account during the same time that was actively engaging in the alleged embezzlement scheme. The shares are from stock option exercises, restricted stock unit awards, ESPP purchases, and reinvestment of Expeditors' dividends into Expeditors' stock. *Id.*

## II.  STANDARD OF REVIEW

20
21
22
23

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party." In deciding whether to dismiss a claim under this rule, the court is generally limited to reviewing only the complaint but may review materials

1   which are properly submitted as part of the complaint and may take judicial notice of undisputed

2   matters of public record that are outside the pleadings. *Lee v. City of Los Angeles*, 250 F.3d 668,

3   688-89 (9th Cir. 2001).

III.   DISCUSSION

4

5   A.   Personal Jurisdiction

6         "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

7   plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v.*

8   *Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004). Due process requires that the

9   defendant have "certain minimum contacts [with the forum] such that the maintenance of the suit

10   does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v.*

11   *Washington*, 326 U.S. 310, 316 (1945) (citation omitted). A plaintiff satisfies the "minimum

12   contacts" requirement by establishing either general or specific personal jurisdiction. *See*

13   *Schwarzenegger*, 374 F.3d at 801–02.

14         1.   General Jurisdiction

15         General personal jurisdiction arises from "continuous and systematic general business

16   contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), that

17   "approximate physical presence" in the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l*

18   *Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). As in its initial Complaint, "Expeditors Washington

19   has not alleged that Mr. Cadena has substantial, continuous and systematic contacts with

20   Washington that approximate physical presence." Dkt. 31 R&R at 9:12–13; *see also* Dkt. 43,

21   Declaration of Armando Cadena, ¶¶ 2–9, 13–18.

22         2.   Specific Personal Jurisdiction

23         Expeditors Washington previously conceded that this Court lacks specific personal

1    jurisdiction of Mr. Cadena absent an enforceable forum-selection clause. Dkt. 31 R&R at 15:14–

2    16. Expeditors Washington also did not object to the R&R's conclusion that the Court lacks

3    personal jurisdiction as to its conversion and constructive trust claims. *See* Dkt. 33; *see also* 28

4    U.S.C. § 636(b)(1)(C) (requiring that a district judge only make a "de novo determination" with

5    respect to an R&R's findings "to which objection is made"). Instead, Expeditors Washington

6    argues as it did previously, that (1) personal jurisdiction of Mr. Cadena for purposes of its

7    declaratory judgment claim arises from the forum-selection clauses contained in the Stock

8    Option Agreements and (2) this Court should exercise pendent personal jurisdiction over its

9    conversion and constructive trust claims. The Court previously rejected both these arguments.

10   *See* Dkt. 31; Dkt. 38. Neither the FAC nor Expeditors Washington's opposition provide the

11   Court with any factual or legal basis to depart from its prior rejection of these claims.

12          3.      Forum-Selection Clause

13          In its declaratory judgment claim, Expeditors Washington contends it is entitled to entry

14   of a judgment holding that (a) Cadena's fraud and misconduct over time constitutes a violation

15   of the Expeditors Code of Business Conduct, which is applicable to all Expeditors' personnel

16   throughout the world; (b) Cadena's fraud and misconduct, including his continued wrongful

17   possession of funds, prevent or disqualify him from having authority or standing to (i) receive

18   stock options in the first instance, and/or (ii) exercise stock options and obtain Expeditors

19   common stock; and (c) Cadena's purported exercise of stock options is null and void. Dkt. 39,

20   FAC at 7-8.

21          At issue are the Stock Option Agreements between Expeditors Washington and Cadena

22   regarding stock options granted in 2014 – 2016. As previously noted, the Stock Option

23   Agreements containing the forum-selection clause upon which Expeditors Washington relies,

1    provide that the agreements "shall be construed and enforced under the laws of the State of

2    Washington" and that any action brought with respect to the agreements, shall be brought in a

3    court in King County, Washington. *Id.*, Ex. B (at ¶ 15), Ex. C (at ¶ 15), and Ex. D (at ¶ 15).

4         In diversity cases, federal law governs the analysis of the effect and scope of forum

5    selection clauses. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32

6    L.Ed.2d 513 (1972). In *Bremen*, the Supreme Court held that a forum selection clause is

7    presumptively valid and should not be set aside unless the party challenging the clause "clearly

8    show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for

9    such reasons as fraud or overreaching." 407 U.S. at 15, 92 S.Ct. 1907. A contractual forum

10   selection clause may "be 'unreasonable' and unenforceable if the chosen forum is seriously

11   inconvenient for the trial of the action." *Id.* at 16, 92 S.Ct. 1907. "In such circumstances it should

12   be incumbent on the party seeking to escape his contract to show that trial in the contractual

13   forum will be so gravely difficult and inconvenient that he will for all practical purposes be

14   deprived of his day in court." *Id.* at 18, 92 S.Ct. 1907. The party challenging the forum-selection

15   clause carries a "heavy burden of proof" and must "clearly show that enforcement would be

16   unreasonable and unjust, or that the clause was invalid for such reasons as fraud or

17   overreaching." *Bremen*, 407 U.S. at 15, 17.

18        This Court previously concluded that the second *Bremen* exception to the enforcement of

19   the forum selection clauses was satisfied by the risk of traveling internationally during the

20   current COVID-19 global health crises, which has created an unprecedented and exceptional

21   situation that renders the forum selection clause unenforceable at this time. *See* Dkt. 31 R&R at

22   19.

23

1    Expeditors Washington argues that the Supreme Court's decision in *Atlantic Marine*

2 *Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49 (2013) precludes Mr.

3 Cadena from raising "private interest" factors when arguing this exception to the enforceability

4 of a forum-selection clause. Dkt. 47 at 12:6–13:4. However, "[n]othing in *Atlantic Marine*

5 disturbs the long-standing body of law clarifying that a court need not transfer an action based on

6 a forum-selection clause if the clause is invalid (*i.e.*, an enforceability challenge)." *Gemini*

7 *Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 915 (9th Cir. 2019) (quoting *Reading*

8 *Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 97 (3d Cir. 2018)). The truncated *Atlantic*

9 *Marine* analysis, which disposes of the private factors typically considered under § 1404(a) and

10 the doctrine of forum non conveniens, is relevant only where a valid and enforceable forum-

11 selection clause exists and a party seeks transfer on that basis. *See Barnett v. DynCorp Int'l,*

12 *L.L.C.*, 831 F.3d 296, 302 (5th Cir. 2016) ("while presupposing a 'valid' forum selection clause,

13 the [Supreme] Court in *Atlantic Marine* did not mention the word 'enforceability'"); *see also*,

14 *Gehrmann v. Knight-Swift Transp. Holdings Inc.*, 2021 WL 1090793, at *2 (W.D. Wash. Mar.

15 22, 2021) (Defendant filed a motion to transfer and raised an enforceability challenge. The court

16 did not preclude argument of "private" factors.); *Radiant Glob. Logistics, Inc. v. Drummond*,

17 2018 WL 5276581, at *6 (W.D. Wash. Oct. 24, 2018) (bifurcating the enforceability and forum

18 non conveniens analyses).

19    Expeditors Washington next argues that Mr. Cadena cannot satisfy the second *Bremen*

20 exception to the enforcement of the forum selection clauses contained in the Stock Option

21 Agreements because (1) he has not shown that he is financially unable to travel; (2) his concerns

22 about the COVID-19 pandemic are undermined by the lack of an assertion as to his vaccination

23 status, that the risk of infection has decreased in Washington; and, that he need not travel to

Washington to "have his day in court" because the Western District of Washington has instituted procedures and controls to hold hearings and trials remotely. Dkt. 47, p. 16.

Mr. Cadena provided the following evidence:

1.    The rate of new COVID-19 cases in the both the United States and Mexico is greater now than the rate when the R&R was issued. Dkt. 44, Harms Decl., Exs. M, N.

2.    There are nearly 2,000 COVID-19 deaths reported in the United States each day. *Id.*, Ex. M.

3.    Only 56% of U.S. citizens are fully vaccinated. *Id.*

4.    Only 41% of Mexican Citizens are fully vaccinated. Dkt. 50, Willey Decl. ¶ 8. As of October 2, 2021, this figure was 35%. Dkt. 44, Harms Decl., Ex. N. Although the vaccination rate is slowly rising in Mexico, the same is not true in the pandemic-plagued United States. Further, the significance of the vaccine is quickly dwindling due to new vaccine-resistant variants. *Id.*, Ex. P.

5.    The predominant Delta variant is twice as contagious as previous variants, is more likely to cause severe illness, and is more likely to infect vaccinated individuals. *Id.*, Ex. P.

6.    The CDC has designated the United States as a "Level 4: Very High" COVID-19 risk, the CDC's highest designation to inform individuals to "[a]void travel" to the country. *Id.*, Ex. O.

7.    Mr. Cadena recently suffered from a severe Herpes Zoster (shingles) infection located on his trigeminal nerve, near the right optical nerve. He was hospitalized for three days and developed acute postherpetic neuralgia. Mr. Cadena is still taking medicine to control the neuralgia and damage to his right eye. Mr. Cadena's doctor informed him that shingles can be activated by, and/or cause complications with, a COVID-19 infection, and that if Mr. Cadena develops shingles again in conjunction COVID-19, the infection would be even more severe and cause more damage. Dkt. 43, Cadena Decl. ¶¶ 22–24 & Exs. A, B.

8.    Mr. Cadena regularly delivers groceries and provides other necessary assistance to his 91-yearold father. Mr. Cadena is concerned with the possibility of unknowingly contracting COVID19 during his travel related to this lawsuit and infecting his elderly father. *Id.* ¶ 25.

9.    Mr. Cadena lives with his wife and daughter and is concerned with infecting them with COVID-19 as a result of his travel related to this lawsuit. *Id.*

1

2          10.    The witnesses that Mr. Cadena plans to call are located in Mexico
   and will be required to risk exposure to COVID-19 in order to provide live
3          testimony on Mr. Cadena's behalf. *Id.* ¶ 21.

4          These are detailed explanations of how enforcement of the forum-selection clause would

5    put the health and wellbeing of numerous individuals in jeopardy. Expeditors Washington

6    provides no facts or authority in rebuttal. It relies instead on comparing the facts in *Murphy v.*

7    *Schneider National, Inc.*, 362 F.3d 1133 (2004), a seminal case in which the Ninth Circuit held

8    that a forum-selection clause was unenforceable under the second *Bremen* exception. Dkt. 47 at

9    10:4–11:7. There, the litigant argued that he "could not afford to maintain [the] case if it were in

10   a Wisconsin court." *Murphy*, 362 F.3d at 1137. However, Mr. Cadena does not assert that his

11   financial ability to travel satisfies the second *Bremen* exception; rather, he contends – as he did

12   previously – that the risk of traveling during the current COVID-19 global health crises

13   precludes Mr. Cadena from defending himself in this Court thus satisfying the second *Bremen*

14   exception. Because Mr. Cadena will be required to travel internationally, he will come into

15   contact with citizens of many states and countries.

16         Expeditors Washington fails to rebut Mr. Cadena's specific evidence. Expeditors

17   Washington references the fact that 41% of Mexican citizens are fully vaccinated and that 72%

18   of Washingtonians are fully vaccinated but offers nothing in rebuttal to evidence that the Delta

19   variant is vaccine resistant, highly infectious, and deadlier than prior variants, or to Mr. Cadena's

20   sensitivities to a COVID-19 infection and concerns regarding his 91-year-old father.

21         Expeditors Washington also argues that Mr. Cadena has failed to satisfy the second

22   *Bremen* exception because any motions and trials could be held remotely. Dkt. 47 at 11:18–12:5.

23   However, this District currently requires a showing of good cause to proceed with a trial

REPORT AND RECOMMENDATION - 13

via remote video. *See* Gen. Order No. 10-21 at 3:9–11, *modified by* Gen. Order No. 01-22 at 1:20-28 (suspending civil trials until at least February 7, 2022; allowing Zoom trials if good cause is established for such a procedure on a case-by-case basis, at the discretion of the presiding judge). Expeditors Washington has not established good cause for this Court to conduct this case remotely.

Expeditors Washington has not articulated any principled argument in support of haling Mr. Cadena into the Western District of Washington absent the forum selection clause. Moreover, this Court must exercise "[g]reat care and reserve … when extending ... notions of personal jurisdiction into the international field." *Asashi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 115 (1987). In keeping with this mandate, the undersigned again concludes that the risk of traveling during the current COVID-19 global health crises precludes Mr. Cadena from defending himself in this Court thus satisfying the second *Bremen* exception to enforcing the forum selection clauses contained in the Stock Option Agreements.

    4.   <u>Alternative Personal Jurisdictional Argument</u>

In a footnote, Expeditors argues that in the "alternative or in addition to pendent jurisdiction" this Court has specific personal jurisdiction over Mr. Cadena regarding the conversion and constructive trust claims because his conduct was intentional, it was knowingly aimed at Expeditors in Washington, and Cadena knew that the harm would be suffered in Washington." Dkt. 47 p. 14, n.15. In support, Expeditors Washington cites to the FAC at ¶¶ 16-21, describing Mr. Cadena's conduct in Mexico. *Id.*

This Court previously engaged in an exhaustive analysis of this issue and rejected Expeditors Washington's arguments. In fact, Expeditors Washington conceded it failed to allege facts sufficient to support an independent personal jurisdictional basis for its conversion and

1    constructive trust claims and acknowledged that the alleged harm occurred to Expeditors Mexico

2    from Mr. Cadena's conduct in Mexico: "Cadena intended to and did deprive Expeditors Mexico

3    of its property" and that he "misappropriate[d] Expeditor Mexico's funds." Dkt. 1, ¶ 26.  *See*

4    Dkt. 31 R&R pp. 9-17; Dkt. 38 Order Adopting. Expeditors Washington also waived this issue

5    when opposing Mr. Cadena's Motion to Dismiss the initial Complaint. Dkt. 26 at Part III.A; Dkt.

6    31 R&R at 15:14–16.

7            5.    Pendent Jurisdiction

8            Lacking an independent basis to exert personal jurisdiction over Mr. Cadena for its

9    conversion and constructive trust claims, Expeditors Washington again argues that these claims

10   should be allowed to piggy-back onto the specific personal jurisdiction created by the forum

11   selection clauses contained in the Stock Option Agreements. Expeditors Washington provides no

12   new factual or legal basis upon which this Court should pivot from its prior decision that it

13   would be illogical and unfair to extend personal jurisdiction over claims that clearly fall outside

14   the scope of the forum selection clause. *See* R&R at 20:20–22 (citations omitted) (quoted with

15   approval by *Whirlpool Corp. v. Cabri*, 2021 WL 3661157, at *3 n.11 (D. Del. Aug. 18, 2021)).[2]

16           In the Ninth Circuit, the exercise of pendent personal jurisdiction is inappropriate in a

17   diversity case. Rather, "[p]endent jurisdiction exists where there is a sufficiently substantial

18   federal claim to confer federal jurisdiction, and a common nucleus of operative fact between the

19   state and federal claims." *Gilder v. PGA Tour, Inc*., 936 F.2d 417, 421 (9th Cir. 1991).

20   _____

21   [2] Expeditors Washington states that this Court has subject matter jurisdiction of these claims.
     However, the existence of supplemental subject matter jurisdiction is not relevant to whether this

22   Court can exercise personal jurisdiction. *See*, *e.g.*, 4A FEDERAL PRACTICE & PROCEDURE:
     CIVIL § 1069.7 (4th ed.) ("Neither the plain meaning of this statute, which shows it to be a

23   subject matter jurisdiction provision, nor its legislative history supports the conclusion that
     Congress intended Section 1367 to include personal jurisdiction[.]"); *United States v. Country
     Classic Dairies, Inc.*, 2006 WL 2331061, at *2 (D. Utah Aug. 8, 2006).

1    Expeditors Washington asserts jurisdiction based on diversity of the parties, not on a federal

2    question. Dkt. 39, FAC at 1. Expeditors Washington disagrees that a federal "hook" is required

3    and relies on *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107 (9th Cir. 2004), stating

4    that this case "did *not* involve a federal question." Dkt. 47 at 13:13 (emphasis in original).

5    However, the district court in *CE Distribution* was sitting in federal question jurisdiction as the

6    plaintiff in that cause sought declaratory judgment arising out of the Trademark Act of July 5,

7    1964, as amended, 15 U.S.C. §§ 1051-1127 (the 'Lanham Act')." *See* Appellant's Br. at 1, 380

8    F.3d 1107 (No. 02–16305), 2002 WL 32298065 (Section 39 of the Lanham Act, 15 U.S.C. §

9    1121, grants federal courts with original jurisdiction over all Lanham Act-based actions,

10   including those embedded in declaratory judgment claims.)

11        Regardless, the exercise of pendent personal jurisdiction is within the sound discretion of

12   the trial court. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir.

13   2004). This Court previously declined to exercise pendent personal jurisdiction in this case –

14   "Because personal jurisdiction based on a forum selection clause involves some form of consent

15   by the parties, it would be illogical and unfair to extend personal jurisdiction over claims that

16   clearly fall outside its scope." R&R at 20:20–22 (citations omitted) (quoted with approval by

17   *Whirlpool Corp. v. Cabri*, 2021 WL 3661157, at *3 n.11 (D. Del. Aug. 18, 2021)).

18        The forum selection clause in the Stock Option Agreements provides no basis for haling

19   Mr. Cadena into court on the conversion and constructive trust claims, which stem from his

20   alleged fraud and theft in Mexico, and not on his request to exercise his stock options. Haling

21   Mr. Cadena into court in Washington on these counts, based only on his conduct in Mexico,

22   would likely "'offend traditional notions of fair play and substantial justice.'" *GTE New Media*

23   *Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000), *quoting Int'l Shoe*, 326 U.S. at

1    316, 66 S.Ct. 154.

2        Based on the foregoing, the undersigned recommends that the Court again decline to

3    exercise pendent jurisdiction over Expeditors Washington's conversion and constructive trust

4    claims.

5    B.    <u>Standing – Conversion, Constructive Trust, Declaratory Judgment</u>

6        Article III of the Constitution limits the jurisdiction of federal courts to cases and

7    controversies. *See* U.S. Const. art. III, § 2. For a legal dispute to qualify as a genuine case or

8    controversy, a plaintiff must have standing to sue, which requires it to "present an injury that is

9    concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged

10    behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 554

11    U.S. 724, 733 (2008). "The party invoking federal jurisdiction bears the burden of establishing

12    these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted). A

13    plaintiff must demonstrate standing for each claim it seeks to advance and for each form of relief

14    that is sought. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citations

15    omitted). A lack of Article III standing is a jurisdictional issue properly raised in a Rule 12

16    motion. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

17        The Court previously concluded that Expeditors Washington lacked standing to pursue its

18    claims. *See* Dkt. 31, R&R at 23-26; Dkt. 38 Order Adopting. Expeditors Washington has not

19    alleged any new facts to support its claim that it has standing to bring claims of conversion,

20    constructive trust, and for declaratory judgment. Rather, it recasts its original allegations to imply

21    that it is the "proper owner" of the funds embezzled by Mr. Cadena and that Mr. Cadena's fraud

22    caused harm to it – *not* to Expeditors Mexico. *Compare* Dkt. 1 at 4 with Dkt. 39 at 7-8. For

23    example, Expeditors no long frames Mr. Cadena's alleged fraud as a "violation[] of the terms of

1    his employment with Expeditors Mexico … including … the Expeditors Code of Business

2    Conduct" (Dkt. 1 ¶ 22) but rather, as a violation of Expeditors Code of Business Conduct,

3    "applicable to all Expeditors personnel throughout the world" (Dkt. 39 ¶ 36). Expeditors

4    Washington provides no factual or legal basis for this Court to conclude that these "new"

5    allegations entitle it to pursue these claims on behalf of its subsidiary.

6              1.      <u>Expeditors Washington Lacks Standing For Its Conversion Claim</u>

7              Expeditors Washington now alleges that it is the "lawful owner of the monies that were

8    misappropriated by Cadena, including but not limited to the funds in the Well Fargo Account."

9    Dkt. 39, ¶ 38. This is a bare legal conclusion that directly contradicts (or at least obfuscates) the

10   facts alleged by Expeditors Washington in its original Complaint. There, Expeditors Washington

11   alleged that the converted "funds rightfully belong[] to *Expeditors Mexico*," Dkt. 1 ¶ 22; (2) Mr.

12   Cadena "deprive[d] *Expeditors Mexico* of its property," *id*. ¶ 26; (3) Mr. Cadena's "retention of

13   *Expeditors Mexico's* money constitutes conversion," *id*. ¶ 27; and (4) Mr. Cadena "has failed to

14   repay the money he stole *from Expeditors Mexico*," *id*. ¶ 30. Expeditors Washington also

15   acknowledges in the FAC that it did not employ Mr. Cadena but rather; Mr. Cadena was

16   employed by its subsidiary, Expeditors Mexico. FAC ¶ 7. In addition, Mr. Cadena's

17   "fraudulently invoiced higher amounts for services rendered to Expeditors Mexico" were paid by

18   Expeditors Mexico – not Expeditors Washington. *Id.*, ¶¶ 16, 17, 21, 27 & Ex. A.

19             A party to a lawsuit "must assert [its] own legal rights and interests and cannot rest [its]

20   claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499

21   (1975). Expeditors Washington must have a "personal stake" in the outcome of this case "to

22   warrant [its] invocation of federal court jurisdiction and to justify exercise of the court's remedial

23   powers on [its] behalf." *EMI Ltd, v. Bennett*, 738 F.2d 994, 996 (9th Cir. 1984) (citations

omitted). Apparently mindful of this requirement, Expeditors Washington alleges that it has standing to assert a claim for conversion "*through* Expeditors Mexico." Dkt. 39, FAC ¶ 38. It alleges that it suffered a direct harm because Mr. Cadena's embezzlement directly reduced Expeditors Mexico's annual profits thereby, reducing the dividends declared and paid by Expeditors Mexico to Expeditors Washington. Dkt. 47 at 1-2; *See* Dkt. 39, FAC ¶¶ 40–41. The Court concludes that Expeditors Washington's allegations of "direct harm" are speculative.

Expeditors Washington alleges no facts to support its "annual profits to dividends declared and paid" theory. On the other hand, its Form 10-K reflects that, as of "December 31, 2019, cash and cash equivalent balances of $457 million were held by [Expeditors Washington's] non-United States subsidiaries ...." Dkt. 44, Harms Decl., Ex. K at 29. Thus, Expeditors Washington does not receive all profits of its subsidiaries and as it acknowledged in the FAC, "Expeditors Mexico has declared and paid ... dividends for every year 2011 – 2020." Dkt. 39, FAC ¶ 10; *see also id*. ¶¶ 40–41 (referencing "dividends declared and paid"). There is no allegation that Expeditors Mexico failed to remit a declared dividend to Expeditors Washington due to the overpriced AASCE invoices. *See* Dkt. 39 FAC ¶¶ 10, 40–41.

Moreover, courts "have consistently held that shareholders lack standing to bring cases on their own behalf where their losses from the alleged injury to the corporation amount to nothing more than a diminution in stock value or a loss of dividends." *See*, *e.g.*, *Hometown Fin., Inc. v. United States*, 56 Fed. Cl. 477, 486 (Fed. Cl. 2003). As explained by the Ninth Circuit, this is so "because corporate shareholders do not directly own any part of a corporation's property or assets ... but only shares of stock, which represent a proportionate interest in the corporate entity..." and that the "profits themselves belong to the corporation, and do not pass to the shareholders unless and until the board of directors declares a dividend." *Broad v. Sealaska*

1   *Corp.*, 85 F.3d 422, 430 (9th Cir. 1996).

2           Expeditors Washington also argues that its "general factual allegations of injury resulting

3   from [Mr. Cadena's] conduct, are more than sufficient." Dkt. 47 at 19:7–8. However, "to be

4   entitled to the presumption of truth," allegations must contain "underlying facts to give fair

5   notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d

6   1202, 1216 (9th Cir. 2011). It is Expeditors Washington's burden to "establish (or here, plead)

7   that it has 'some property interest in the goods allegedly converted.'" *Coto Settlement v.*

8   *Eisenberg*, 593 F.3d 1031, 1039 (9th Cir. 2010). Expeditors Washington correctly notes that

9   lawsuits by assignees of contract rights may satisfy Article III standing requirements. *See DZ*

10  *Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*, 2015 WL

11  3797162, * 4 (W.D. Wash. June 17, 2015) (citing *Sprint Comm's Co., LP v. APCC Servs., Inc.*,

12  554 U.S. 269, 285–86, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008)). However, Expeditors

13  Washington has not alleged that it is an assignee and in fact acknowledges that such an

14  assignment may be necessary to establish its standing to assert its conversion and constructive

15  trust claims.[3] Expeditors Washington attempts to fill the absence of such an assignment by

16  alleging that it and its subsidiaries "conduct [themselves] as a single integrated organization."

17  Dkt. 39, FAC ¶ 8. Other than this vague and conclusory allegation, however, Expeditors

18  Washington alleges no facts upon which the Court may reasonably conclude that Expeditors

19  Washington and Expeditors Mexico are in fact one corporate entity and that Expeditors

20  Washington is legally competent to pursue the claims of its subsidiary in this litigation.

21

22

23

---

[3] The undersigned's recommendation to deny Expeditor Washington's request for leave to seek such an assignment and to amend its complaint a third time is discussed below.

1    In conclusion, Expeditors Washington's allegation that it has a property interest "through

2    Expeditors Mexico" is legally and factually insufficient to establish that it has standing to pursue

3    a claim of conversion on behalf of its subsidiary, Expeditors Washington.

4          2.    <u>Expeditors Washington Lacks Standing For Its Constructive Trust Claim</u>

5    In this claim, Expeditors Washington seeks a constructive trust over (a) the Wells Fargo

6    account funds, (b) the Fidelity Account, and (c) the options or common stock that Mr. Cadena

7    has obtained or common stock he seeks to obtain by the exercise of the Stock Options. Dkt. 39,

8    FAC ¶ 49. Expeditors Trust reasons that a constructive trust is an equitable and necessary

9    remedy to prevent Mr. Cadena from benefiting from the money that he stole from Expeditors

10    Mexico and the stock option grants he received while he was engaged in fraudulent conduct

11    during his employment with Expeditors Mexico. Dkt. 39 FAC, ¶¶ 45 – 49.

12    A district court will properly dismiss a constructive trust claim for lack of standing when

13    a plaintiff "fail[s] to allege facts sufficient to show that [it has] a legally protected interest in the

14    property at issue." *See Appleton v. Bohart*, 754 F. App'x 621 (9th Cir. 2019) (citing *Lujan*, 504

15    U.S. at 560–61. Expeditors Washington must demonstrate that it has suffered an invasion of a

16    legally protected injury; there is a causal connection between the injury and the conduct

17    complained of; and, that it is likely that the injury will be redressed by a favorable decision.

18    *Lujan*, 504 U.S. at 560–61.

19    Expeditors Washington argues that it has standing to pursue a constructive trust over the

20    funds in the Wells Fargo account (now in the Court's registry) because: "[t]he money that

21    Cadena stole properly belongs to Expeditors…". Dkt. 47 at 24; Dkt. 39 FAC, ¶¶ 27-29, 47. The

22    undersigned concludes that Expeditors Washington has failed to allege facts sufficient to show

23    that it has a legally protected interest in the funds in the Wells Fargo account. In fact, Expeditors

1    Washington acknowledges that the funds in the Wells Fargo account "comprise monies that

2    Cadena embezzled from Expeditors Mexico." Id. ¶ 27.

3        Expeditors Washington next argues that it is entitled to a constructive trust over the

4    "Fidelity Account and the ESPP proceeds therein, which legal title Cadena obtained in

5    circumstances that 'render it unconscientious for the holder of the legal title to retain and enjoy

6    the beneficial interest.'" Dkt. 47 at 24; Dkt. 39 FAC ¶¶ 30, 47. However, the Trust Declaration

7    indicates that Expeditors Washington is the settlor of the ESPP Trust, Fidelity Trust is the

8    trustee, and Mr. Cadena is the beneficiary. *See* Dkt. 44, Harms Decl., Ex. E ¶ 3.1. The Trust

9    Declaration also provides that "[p]ersons other than Participants will have no interest in the

10   trust." *Id*. ¶ 2.1. Thus, the property over which Expeditors Washington seeks to impose a

11   constructive trust is already held in trust by Fidelity, the legal title holder to the Stock Plan

12   Proceeds, who is not a party to this litigation.

13       Finally, Expeditors Washington argues that it has standing to seek the imposition of a

14   constructive trust over the Expeditors common stock "that Cadena seeks to obtain by the exercise

15   of options" notwithstanding his admitted fraud. Dkt. 47 at 24; Dkt. 39 FAC, ¶¶ 21, 49. However,

16   such common stock is either being held in the ESPP Trust or is already in Expeditors

17   Washington's possession. Expeditors Washington has acknowledged that "it is undisputed that

18   Cadena has not paid any exercise price and he does not possess any Expeditors stock as a result

19   of the purported exercise." Dkt. 26 at 15.

20       Thus, either Expeditors Washington is in possession of the options and, therefore, has not

21   conferred any benefit upon Mr. Cadena; or (b) Expeditors Washington transferred the common

22   stock to Fidelity and it is being held in the ESPP Trust for Mr. Cadena's benefit. Therefore,

23   Expeditors Washington has not sufficiently pleaded that the legal title holder of the options or

1  common stock (Expeditors Washington or Fidelity Trust, respectively) would be unjustly

2  enriched if allowed to retain them.

3        3.      Alternative Remedy Requested – Further Leave to Amend

4        Failing sufficient allegations to establish standing as to the conversion and constructive

5  trust claims, Expeditors Washington requests leave to file a third complaint to plead a tortious

6  interference with business expectancy claim, and/or to allow it to take assignment of claims from

7  Expeditors Mexico. Dkt. 47 at 20 n.22. The undersigned recommends that this request be denied

8  as untimely and futile.

9        Firstly, Expeditors Washington has waited nearly 20 months to assert these new theories.

10 Secondly, any amendment as to the proposed tortious interference claim is futile because

11 Expeditors Washington has not lost a business expectancy—it merely alleges that AASCE

12 "invoiced higher amounts for services rendered to Expeditors Mexico." Dkt. 39, FAC ¶ 16. And,

13 as with its conversion claim, Expeditors Washington cannot litigate a claim for tortious

14 interference on behalf of Expeditors Mexico in the Western District of Washington due to a lack

15 of standing and personal jurisdiction. *Kim v. Friedman*, 9 Wn. App. 2d 1001, 2019 WL 2267285,

16 at *8 (2019) ("A shareholder does not have standing to assert a personal cause of action for

17 tortious interference if the injury he asserts is the result of injury to a corporation.").

18       Thirdly, Expeditors Washington's proposal that it obtain an assignment of claims from its

19 subsidiary at this stage in the litigation "triggers a presumption of collusion." *See* 28 U.S.C. §

20 1359 ("[a] district court shall not have jurisdiction of a civil action in which any party, by

21 assignment or otherwise, has been improperly or collusively made or joined to invoke the

22 jurisdiction of such court."); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20

23 F.3d 987, 992 (9th Cir. 1994); *see also Miller & Lux v. E. Side Canal & Irrigation Co.*, 211 U.S.

293, 306 (1908) (assignment of claim between parent and subsidiary "only that it might have a standing in the Federal court as a litigant in respect of those rights" warrants dismissal).

Expeditors Washington provides no "sufficiently compelling" business reason for its request to obtain an assignment of its subsidiary's claims but bases its claim on the sole and express purpose of continuing to litigate in this forum.[4] Thus, it has failed to rebut the presumption of collusion. *See Nike, Inc*., 20 F.3d at 992 ("If we had any remaining doubts whether NIL and Nike acted at least in part to obtain a federal forum, the timing of the assignment, only three days before Nike filed the complaint in this action, dispels them.)

Based on the foregoing, the undersigned recommends that the Court dismiss Expeditors Washington's conversion and constructive trust claims for lack of standing without prejudice and without further leave to amend.

4.    Expeditors Washington Lacks Standing to Pursue a Declaratory Judgment

In the FAC, Expeditors Washington seeks a declaratory judgment as to whether Mr. Cadena has standing and authority to receive and exercise stock options due to his misconduct and violation of Expeditors Code of Business Conduct. Dkt. 47 at 20-22.

The relief sought in the FAC is identical to that sought in the original complaint. *See* Dkt. 1 ¶¶ 21, 22(a)-(c). As to the parties' rights and obligations vis-à-vis the Stock Options and Stock Option Plans, this Court previously concluded:

> "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Wash*., 759 F.2d 1353, 1357 (9th Cir. 1985). Here, the Court is being asked to determine whether Mr. Cadena's letter to Fidelity Services was an effective exercise of his options and then speculate on how the Fidelity

---

[4] In fact, "[t]he business reason must be sufficiently compelling that the assignment would have been made absent the purpose of gaining a federal forum." *Yokeno v. Mafnas*, 973 F.2d 803, 811 (9th Cir.1992).

entities will exercise their judgment on his request. The Court cannot resolve the
controversies related to the ESPP and Stock Plan Proceeds because the Fidelity
entities are not parties to this case. Thus, a declaration would neither settle the
legal relations at issue nor afford relief from the uncertainty faced by the parties.
*See Delno v. Market St. R. Co.*, 124 F.2d 965, 968–69 (9th Cir. 1942) (affirming
dismissal of declaratory relief claim where such relief would not finally settle the
issue because absent parties would have the right to litigate the same question);
*Clapper*, 568 U.S. at 413-14 (request for declaratory relief declaratory judgment
claim where Court has to rely on "speculation" or "guesswork as to how
independent decisionmakers will exercise their judgment.)

Dkt. 31 at 25-26; Dkt. 38.

As to the effect of Mr. Cadena's violation of the Code of Business Conduct[5] on his

ability to exercise vested stock options, this Court previously concluded that the declaratory

relief sought by Expeditors Washington will amount to a gratuitous statement with no legal

effect on any actual or imminent controversy before this Court:

> …Expeditors Washington has not identified any contract provision or
> legal theory that disqualifies Mr. Cadena from exercising his vested stock options
> due to the alleged "manifest disloyalty." *See* Dkt. 26, p. 12:14–14:2 & n.11. In
> addition, Mr. Cadena sued Expeditors Mexico in Mexican Labor Court with
> regard to the termination of his employment by Expeditors Mexico and that suit is
> pending. *See Armando Cadena Santillana v. Expeditors International De Mexico,
> S.A. de C.V.*, No. 53/2020 (Special Labor Board No. 15, Mexico City). Thus, it is
> likely that the Mexican Labor Court will decide these same issues. *See* WRIGHT
> & MILLER, 10B FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2759
> (4th ed.) ("The courts properly decline relief if the declaratory-judgment
> procedure, and the federal forum, is being used for 'procedural fencing' or 'in a
> race for res judicata.'"); *cf. Mueller Sys., LLC v. Robert Teti & Itet Corp.*, 199 F.
> Supp. 3d 270, 282 (D. Mass. 2016) (district court refusing to exercise jurisdiction
> over a declaratory judgment action because of a pending Canadian case that
> would decide the same issue—"In addition to trying to control the forum, plaintiff
> appears to be trying to pre-empt a Canadian judgment.").

---

[5] In an attempt to survive a second dismissal, Expeditors Washington no longer frames this as a
"violation[] of the terms of [Cadena's] employment with Expeditors Mexico," Dkt. 1 ¶ 22, but,
rather, as a violation of a code of conduct "applicable to all Expeditors personnel throughout the
world," Dkt. 39 FAC ¶ 36. However, it is undisputed that Mr. Cadena was an employee of
Expeditors Mexico, not Expeditors Washington. *Id.* ¶ 7. Therefore, if the Expeditors Code of
Business Conduct applied to Mr. Cadena, it was through his employment at Expeditors Mexico.

REPORT AND RECOMMENDATION - 25

Dkt. 31 at 24; Dkt. 38.

Expeditors Washington has provided no factual or legal reason for the Court to part ways with its prior ruling that Expeditors Washington lacks standing to pursue its declaratory judgment claim; therefore, it is recommended that it be dismissed with prejudice.

C.    Failure to State a Claim

Finally, Mr. Cadena contends that Expeditors Washington has failed to state plausible claims for conversion or the imposition of a constructive trust. Dkt. 42 at 22-30.

Although Rule 12(b) requires drawing all reasonable inferences in favor of the nonmoving party, the Court has no obligation to accept all inferences the plaintiff alleges. *See Holden v. Hagooian*, 978 F.2d 1115, 1121 (9th Cir. 1992). Also, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 753, 754–55 (9th Cir. 1994).

1.    Failure to State a Claim for Conversion

To state a claim for conversion, Expeditors Washington must "establish (or here, plead) that it has 'some property interest in the goods allegedly converted.'" *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1039 (9th Cir. 2010). As previously discussed, Expeditors Washington's claim that it has a property interest in the allegedly converted monies "through Expeditors Mexico" is contrary to fact and law. In addition, because all identifiable monies subject to a declared dividend were remitted to Expeditors Washington by its subsidary, Expeditors Washington has failed to allege conversion. *See Brown ex rel. Richards v. Brown*, 157 Wn. App. 803, 818 n.19, 239 P.3d 602 (2010) ("money may be the subject of a conversion claim only where it is identifiable").

1

2　　　　2.　　Failure to State a Claim for Imposition of Constructive Trusts

3　　　　"A constructive trust is imposed in equity when property is acquired under such

4 circumstances that the legal title holder would be unjustly enriched if allowed to retain it."

5 *Stocker v. Stocker*, 74 Wn. App. 1, 7, 871 P.2d 1095 (1994). To state a claim for unjust

6 enrichment and thus impose a constructive trust, Expeditors Washington must show (1) that it

7 conferred a benefit upon Mr. Cadena, (2) that Mr. Cadena received such benefit, and that (3)

8 there is acceptance and retention of the benefit under circumstances such that it would be

9 inequitable for him to retain it. *See Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008).

10　　　　In the FAC, Expeditors Washington seeks a constructive trust over (a) the Wells Fargo

11 account funds, (b) the Fidelity Account, and (c) the options or common stock that Mr. Cadena

12 seeks to obtain by the exercise of the Stock Options. Dkt. 39, FAC ¶ 49. Expeditors Washington

13 alleges that the constructive trust is a necessary and equitable device to compel Mr. Cadena to

14 convey his interest in this property because he violated the Expeditors Code of Business Conduct

15 by engaging in fraud. *Id.* ¶ 46.

16　　　　As to the Wells Fargo Account, Expeditors Washington's claim fails because it did not

17 confer any benefit upon Mr. Cadena. Rather, Expeditors Mexico conferred a benefit upon its

18 vendor, AASCE, in the form of payment of invoices for services rendered. Dkt. 39, FAC ¶¶ 16–

19 17, 21, 27 & Ex. A. Subsequently, some unidentifiable portions of such payments were

20 transferred from AASCE to Mr. Cadena. *See id.* ¶ 16. Thus, Expeditors Washington did not

21 unjustly enrich Mr. Cadena.

22　　　　As to the ESPP Account, and the Stock Plan Proceeds held in the ESPP Trust, Expeditors

23 Washington's claim fails because Mr. Cadena is not the legal title holder; rather, Fidelity Trust—

a non-party—holds legal title to the common stock and Stock Plan Proceeds for Mr. Cadena's benefit. *See Papale-Keefe*, 647 N.E.2d at 725 (settlor passes legal title of property to trustee). And as previously noted, the stock options or common stock is either in the possession of Expeditors Washington or has been transferred to Fidelity and is being held in the ESPP Trust for Mr. Cadena's benefit. *See* Dkt. 26 at 15:6–16:8. Consequently, Expeditors Washington has not sufficiently pleaded that the legal title holder of the options or common stock (Expeditors Washington or Fidelity Trust, respectively) would be unjustly enriched if allowed to retain them.

Finally, because Expeditors Washington's unjust enrichment claim is entirely duplicative of its conversion and declaratory judgment claims, and because these claims fail for the reasons stated above, its unjust enrichment claim also fails. *See Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wn. App. 80, 88, 18 P.3d 1144 (2001). ("Because there was no tort of conversion here, there was no basis to impose a constructive trust on the loan proceeds.").

Based on the foregoing, the undersigned recommends that Expeditors Washington's claims for conversion and for the imposition of a constructive trust may be dismissed on the additional grounds that it has failed to state a plausible claim.

D.    Request for Fees -- RCW 4.28.185(5)

Washington's long-arm statute allows for the grant of attorneys' fees to a prevailing out-of-state defendant. RCW 4.28.185(5) provides:

> In the event the defendant is personally served outside the state on causes of action enumerated in this section, and prevails in the action, there may be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees.

Defendants who obtain dismissal for want of personal jurisdiction are understood to have prevailed for purposes of this statute. *Scott Fetzer Co., Kirby Co. Div. v. Weeks*, 114 Wash.2d 109, 124, 786 P.2d 265 (1990) (Fetzer I). Nonetheless, an award of fees is not automatic; the

1  statute allows courts the discretion to deny an otherwise proper request. *Johnson v. Venzon*, 2012

2  WL 3778877, *5 (W.D. Wash. 2012); *see also Amazon.com, Inc. v. Kalaydian*, 2001 WL

3  1892190, *1 (W.D. Wash. 2010) ("Whether to grant or deny a request for attorney's fees under

4  this provision is wholly within the discretion of the trial court"), citing *Fluke Capital &*

5  *Management Services Co. v. Richmond*, 106 Wn.2d 614, 625, 724 P.2d 356 (1986) (recognizing

6  that "an award of attorney's fees that is authorized by statute is left to the trial court's

7  discretion"); *Perkumpulan Investor Crisis Ctr. Dressel –WBG v. Wong*, 2014 WL 3738629, *2

8  (W.D. Wash. 2014); *See also*, *e.g.*, *Dantonio v. Southwest Educ. Dev. Lab.*, 2011 WL 2118577,

9  *9 (W.D. Wash. 2011) (denying fees because plaintiff's "jurisdictional arguments were neither

10  frivolous nor incapable of substantiation").

11       Although Mr. Cadena requested the statutory attorney fees for prevailing on its motion to

12  dismiss for lack of jurisdiction (Dkt. 42 at 24), neither party has provided the Court with any

13  substantive briefing on this issue and therefore, the undersigned has not evaluated the request.

14                                    V.  <u>CONCLUSION</u>

15       Based on the foregoing, the undersigned recommends that the Court dismiss the FAC

16  with prejudice without further leave to amend. The Court should also determine if it will

17  entertain additional briefing as to Mr. Cadena's request for attorney fees pursuant to RCW

18  4.28.185(5).

19                              <u>OBJECTIONS AND APPEAL</u>

20       This Report and Recommendation is not an appealable order. Therefore, a notice of

21  appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

22  assigned District Judge enters a judgment in the case.

23

Objections, however, may be filed and served upon all parties no later than **February 9, 2022**. The Clerk should note the matter for **February 11, 2022,** as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed seven (7) pages. The failure to timely object may affect the right to appeal.

DATED this 24th day of January, 2022.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 30