UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., | CASE NO. 2:20-cv-00349-LK |
| Plaintiff, | ORDER ADOPTING REPORT AND RECOMMENDATION IN PART, MODIFYING IT IN PART, AND DISMISSING EXPEDITORS WASHINGTON'S COMPLAINT |
| v. | |
| ARMANDO CADENA SANTILLANA, | |
| Defendant. | |

This matter comes before the Court on Judge Brian A. Tsuchida's Report and Recommendation ("R&R") regarding Defendant Armando Cadena Santillana's motion to dismiss Plaintiff Expeditor's International of Washington, Inc.'s ("Expeditors Washington") First Amended Complaint. Dkt. No. 55. The Court adopts the R&R in part, modifies it in part, and dismisses Expeditors Washington's complaint.

## I.      BACKGROUND

The Court adopts the discussion of the background and procedural history of this case set forth in the R&R, Dkt. No. 55 at 1–7, but briefly recounts some relevant background here.

Cadena first moved to dismiss Expeditors Washington's complaint on September 10, 2020. Dkt. No. 23. In a report and recommendation dated October 26, 2020, Judge Tsuchida recommended granting the motion to dismiss, Dkt. No. 31 at 1, and the Court adopted that report and recommendation over Expeditors Washington's objections on August 17, 2021. Dkt. Nos. 32, 38. Expeditors Washington then filed an amended complaint on September 7, 2021, Dkt. No. 39, and Cadena again moved to dismiss, Dkt. No. 42. Judge Tsuchida recommended granting Cadena's new motion to dismiss, Dkt. No. 55, and Expeditors Washington objected again, Dkt. No. 56.

Expeditors Washington's amended complaint asserts claims for declaratory judgment, conversion, and constructive trust. Dkt. No. 39 at 7–9. The R&R recommends that the amended complaint be dismissed for lack of personal jurisdiction, lack of standing, and failure to state a claim, for the following reasons:

(1) First, the Court lacks personal jurisdiction over Cadena with respect to each of the claims. As to the declaratory judgment claim, the forum-selection clause cannot establish personal jurisdiction because it is invalid due to this forum being "seriously inconvenient" under *M/S Bremen v. Zapata Off–Shore Company*, 407 U.S. 1 (1972). Dkt. No. 55 at 8–14. As to the conversion and constructive trust claims, the Court lacks an independent basis to exercise personal jurisdiction over Cadena, and should decline to exercise pendent personal jurisdiction. *Id.* at 15–18.

(2) Second, Expeditors Washington lacks standing to assert each of its claims. It lacks standing to assert its declaratory judgment claim because the parties' rights and obligations under the Stock Option Agreements[1] depend on the discretion of an

---

[1] The amended complaint asserts claims with respect to three stock option agreements between Expeditors Washington and Cadena made in 2014, 2015, and 2016. Dkt. No. 39 at 3; *see* Dkt. No. 49-2 (2016 Stock Option Agreement); Dkt. No. 49-3 (2015 Stock Option Agreement); Dkt. No. 49-4 (2014 Stock Option Agreement) (collectively, "Stock Option Agreements").

independent entity that is not a party to this case, precluding a final settlement of the legal relations at issue. Dkt. No. 55 at 24–26. It lacks standing to assert its conversion claim because the only injury it alleges is a diminution in the value of dividends paid to it as a shareholder in Expeditors Mexico,[2] and courts have consistently held that such a loss of dividends is insufficient to confer standing on a shareholder. Dkt. No. 55 at 18–21. Expeditors Washington also lacks standing to assert its constructive trust claim because it has failed to allege that it has a legally protected interest in the property at issue. *Id.* at 21–23.

(3) Third, Expeditors Washington has failed to state claims for conversion and constructive trust. With respect to its conversion claim, Expeditors Washington fails to allege a property interest in the allegedly converted funds. Dkt. No. 55 at 26–28. With respect to its constructive trust claim, Expeditors Washington either did not confer the alleged benefit on Cadena, or Cadena is not the legal title holder of the property in question. *Id.*

(4) The R&R also denied as untimely and futile Expeditors Washington's request to file a second amended complaint to add a claim for tortious interference with business expectancy and/or to allow it to take assignment of claims from Expeditors Mexico. Dkt. No. 55 at 23–24. Expeditors Washington waited nearly 20 months to assert these new theories, and the new claims would succumb to the same defects as its existing claims, including its inability to assert standing as a shareholder. Likewise, an assignment of claims at this stage would trigger a presumption that jurisdiction had been established only by collusion. *Id.*

---

[2] Cadena was employed by Expeditors Washington's wholly owned subsidiary in Mexico, Expeditors International de Mexico S.A. de C.V. ("Expeditors Mexico"). Dkt. No. 39 at 2.

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART, MODIFYING IT IN PART, AND DISMISSING EXPEDITORS WASHINGTON'S COMPLAINT - 3

1    Expeditors Washington argues that the R&R erred in its conclusions regarding: (1) the

2    enforceability of the forum-selection clauses in the three Stock Option Agreements between

3    Expeditors Washington and Cadena; and (2) Expeditors Washington's standing to seek declaratory

4    judgment regarding the parties' rights and obligations under the Stock Option Agreements. Dkt.

5    No. 56 at 4. Expeditors Washington does not object to any of the other conclusions in the R&R.

6                              **II.    LEGAL STANDARD**

7    This Court must "make a *de novo* determination of those portions of the report or specified

8    proposed findings or recommendations to which" a party objects. 28 U.S.C. § 636(b)(1)(C); *see*

9    Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate

10   judge's disposition that has been properly objected to."); *United States v. Reyna-Tapia*, 328 F.3d

11   1114, 1121 (9th Cir. 2003) (en banc) (same). The Court "may accept, reject, or modify, in whole

12   or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.

13   § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). However, the Federal Magistrates Act "does not on

14   its face require any review at all . . . of any issue that is not the subject of an objection." *Thomas*

15   *v. Arn*, 474 U.S. 140, 149 (1989); *see Reyna-Tapia*, 328 F.3d at 1121 ("[T]he district judge must

16   review the magistrate judge's findings and recommendations de novo *if objection is made*, but not

17   otherwise." (emphasis in original)).

18                              **III.    DISCUSSION**

19   **A.    The Court Has Jurisdiction Under 28 U.S.C. § 1332(a)(2)**

20   Expeditors Washington asserts, and Cadena does not dispute, that Cadena "is a resident of

21   Mexico,"[3] Expeditors Washington is a citizen of Washington State, and more than $75,000 is in

22   dispute. Dkt. No. 39 at 1; Dkt. No. 47 at 18 n.13. Indeed, with respect to Expeditors Washington's

23

24   ───────────────
[3] Cadena also reports that he has "been domiciled and resided in Mexico City, Mexico since 1986" and is a citizen of Mexico. Dkt. No. 43 at 1; Dkt. No. 42 at 7, 21.

1    declaratory judgment claim alone, it appears that over $75,000 is in dispute. Dkt. Nos. 44-6, 49-6,

2    49-7. Accordingly, the Court finds that the requirements of 28 U.S.C. § 1332(a)(2) are met.

3    **B.     The Court Has Personal Jurisdiction Over Cadena With Respect to a Portion of
         Expeditors Washington's Declaratory Judgment Claim**

4            The Court declines to adopt the R&R's conclusion that the Court lacks personal jurisdiction

5    over Cadena with respect to Expeditors Washington's declaratory judgment claim, Dkt. No. 55 at

6    8–14, and instead finds that it has such jurisdiction over the portion of that claim covered by the

7    forum-selection clauses in the Stock Option Agreements, Dkt. Nos. 44-7–44-9, 49-2–49-4.[4] The

8    forum-selection clauses are sufficient to establish personal jurisdiction over Cadena because he

9    consented to personal jurisdiction by assenting to the Stock Option Agreements, and no exception

10   to enforceability of the clauses applies. Specifically, the difficulties Cadena would face from

11   litigating in this forum during the COVID-19 pandemic do not establish an exceptional reason or

12   extraordinary circumstance that would cause him grave difficulties or inconvenience.

13           Because a forum-selection clause "represents the parties' agreement as to the most proper

14   forum," it should be "given controlling weight in all but the most exceptional cases." *Atlantic*

15   *Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60, 63 (2013) (cleaned up).

16   In other words, such clauses should be enforced "unless extraordinary circumstances unrelated to

17   the convenience of the parties clearly disfavor" enforcement. *Id.* at 52. A plaintiff succeeds in

18   showing that such "exceptional" and "extraordinary" circumstances exist when:

         (1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would
         contravene a strong public policy of the forum in which suit is brought, whether
         declared by statute or by judicial decision," or (3) "trial in the contractual forum
         will be so gravely difficult and inconvenient that [the litigant] will for all practical
         purposes be deprived of his day in court."

---

[4] When considering personal jurisdiction, "[t]he court may consider evidence presented in affidavits to assist it in its determination[.]" *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *overruled on other grounds by Daimler AG v. Bauman*, 571 U.S. 117 (2014).

1   *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting

2   *Bremen*, 407 U.S. at 15, 18). Thus, absent a valid exception under *Bremen*, the forum-selection

3   clauses in the parties' Stock Option Agreements establish the Court's personal jurisdiction over

4   Cadena with respect to Expeditors Washington's request for declaratory judgment relating to those

5   Agreements.

6          Cadena argues, and the R&R agrees, that he has shown that this district would be a "gravely

7   difficult and inconvenient forum" due to the risk of contracting or spreading COVID-19 while

8   traveling internationally during the COVID-19 pandemic. Dkt. No. 42 at 20–21; Dkt. No. 55 at

9   13–14; Dkt. No. 57 at 9–10. Cadena and the witnesses he plans to call are located in Mexico. Dkt.

10  No. 42 at 21. Cadena claims that he and his witnesses would have to travel to Washington to defend

11  in this forum and as a result would risk exposure to COVID-19 infection, and risk spreading an

12  infection to others. Dkt. No. 43 at 3–4. He has also suffered from a severe Herpes Zoster, or

13  shingles, infection, which a doctor has advised him could be reactivated by, or cause complications

14  with, a COVID-19 infection. *Id.* at 4. Cadena further expresses concern about potentially infecting

15  his wife and daughter, with whom he lives, or his 91-year-old father, to whom he provides

16  necessary assistance such as delivery of groceries. *Id.* at 5.

17         Cadena and the R&R cite myriad statistics about the relative rates of COVID-19 cases,

18  deaths, and vaccinations in both the United States and Mexico, as well as facts about the

19  contagiousness of the Delta variant and the CDC's travel risk designation for the United States.

20  Dkt. No. 42 at 20–21; Dkt. No. 55 at 12–13; Dkt. No. 53 at 8–9. The R&R concludes that

21  Expeditors Washington "fail[ed] to rebut Mr. Cadena's specific evidence." Dkt. No. 55 at 13. The

22  Court disagrees. As Expeditors Washington argued, "Cadena need not physically travel to

23  Washington to have his day in court." Dkt. No. 47 at 16. Indeed, after the Court initially continued

24  all civil hearings and trial dates in response to the pandemic, *see* General Order 02-20 at 2 (Mar.

17, 2020), it permitted remote video proceedings in civil cases, "strongly encourag[ing]" the parties to "request to use such procedures to avoid a significant delay before in-person proceedings can resume," *see* General Order 13-20 at 2 (Sept. 4, 2020). The Court also published a handbook on conducting virtual trials, which had been in use for over a year before Cadena filed his motion to dismiss Expeditors Washington's amended complaint, Dkt. No. 42. United States District Court for the Western District of Washington, *Virtual Trials: A Handbook for Attorneys* (Sept. 28, 2020), https://web.archive.org/web/20201019222917/https://www.wawd.uscourts.gov/sites/wawd/files/ VirtrualTrialHandbookforAttorneys.pdf.

By the time Cadena filed his second motion to dismiss, it was well-established that civil proceedings could be conducted remotely. *See, e.g.*, General Order 10-21 at 3 (June 30, 2021); General Order 04-21 at 2 (Mar. 19, 2021). The Court has conducted remote proceedings throughout the pandemic, and the current General Order permits civil matters to "proceed at the discretion of the presiding judge." General Order 04-22 at 2 (Mar. 3, 2022). Moreover, "[f]or good cause in compelling circumstances and with appropriate safeguards," Federal Rule of Civil Procedure 43(a) allows testimony to be taken "in open court by contemporaneous transmission from a different location." *See also Bao Xuyen Le v. Reverend Dr. Martin Luther King, Jr. Cnty.*, 524 F. Supp. 3d 1113, 1116 (W.D. Wash. 2021) ("Nothing about a virtual jury trial is inconsistent with the principles underlying Rules 43(a) and 77(b) . . . and the Court concludes that it has the authority to require the parties in this matter to try this case via remote means."). Because Cadena has not established that he would have to travel to this forum, he has failed to meet the "heavy burden" required for the Court to find that the forum-selection clauses in the Stock Option Agreements are unenforceable.[5]

---

[5] *See Turner v. Costa Crociere S.p.A.*, 9 F.4th 1341, 1346 (11th Cir. 2021) (holding that "Turner . . . has not met his

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART, MODIFYING IT IN PART, AND DISMISSING EXPEDITORS WASHINGTON'S COMPLAINT - 7

Because the forum-selection clauses are valid, Cadena has consented to personal jurisdiction. However, the scope of those clauses does not encompass the entirety of Expeditors Washington's claim for declaratory judgment. In that claim, Expeditors Washington asks the Court to declare:

> 1. "the rights and obligations of the parties under (a) the Stock Option Agreements between Expeditors and Cadena regarding options granted in 2014 – 2016 . . . and (b) the related and governing stock plans, i.e., (i) the Expeditors International of Washington, Inc. 2014 Stock Option Plan, (ii) the Expeditors International of Washington, Inc. 2015 Stock Option Plan, and (iii) the Expeditors International of Washington, Inc. 2016 Stock Option Plan"; and
>
> 2. "that (a) Cadena's fraud and misconduct over time constitutes a violation of the Expeditors Code of Business Conduct, which is applicable to all Expeditors personnel throughout the world; (b) Cadena's fraud and misconduct, including his continued wrongful possession of funds, prevent or disqualify him from having authority or standing to (i) receive stock options in the first instance, and/or (ii) exercise stock options and obtain Expeditors common stock; and (c) Cadena's purported exercise of stock options is null and void."

Dkt. No. 39 at 7–8.

Federal contract law governs the scope of a forum-selection clause. *Yei A. Sun*, 901 F.3d at 1086. Here, the forum-selection clauses encompass "[a]ny action brought with respect to th[e]

---

burden of proving that pursuit of his claims in Italy would subject him to fundamental unfairness" because "he has not established that he would have to travel to Italy in order to pursue his case."); *Vandermast v. Wall & Assocs., Inc.*, No. 20-3831, 2022 WL 164307, at *3 (2d Cir. Jan. 19, 2022) ("[A]ny inconvenience caused to the Vandermasts as to litigating in Virginia during the pandemic cannot overcome the presumptive enforceability of the forum-selection clause," given that "the pandemic's geographic impact is fluid and unpredictable, and significant litigation-related work can now be accomplished remotely, lessening the inconvenience of a forum's location." (cleaned up)); *Stellar Restoration Servs., LLC v. James Christopher Courtney*, 533 F. Supp. 3d 394, 417–18 (E.D. Tex. 2021) (rejecting defendants' arguments that proceeding in Texas during the pandemic "would result in grave inconvenience or unfairness" to them due to travel risks and the fact that one defendant was the sole supporter for an adult son with mental illness; "documents are mostly produced electronically, . . . depositions can take place in [defendants' home state] or through videoconference technology"; and "[t]o accommodate difficulties posed by the public health crisis, the Court regularly conducts hearings via videoconference and telephone"); *Adams Commc'n & Eng'g Tech., Inc. v. Aerovation, Inc.*, No. PWG 19-CV-3131, 2020 WL 3469664, at *3 (D. Md. June 25, 2020) ("[A]s we have learned in recent months with all parties dealing with the impacts of the COVID-19 pandemic, parties can mitigate inconvenience factors to both sides through use of video depositions, and, should this case actually proceed to trial, inconvenience to witnesses located in other states may be mitigated by taking *de bene esse* depositions for use as trial testimony, or by having remote witnesses testify by 'contemporaneous transmission from different locations.'" (quoting Fed. R. Civ. P. 43(a)).

Option[s] or the Plan[s]." Dkt. No. 49-2 at 4 (2016 Stock Option Agreement); Dkt. No. 49-3 at 4 (2015 Stock Option Agreement); Dkt. No. 49-4 at 5 (2014 Stock Option Agreement). The Plans encompass the Agreements, *see* Dkt. Nos. 44-7–44-9 at 2, so the Court has little difficulty concluding that, to the extent Expeditors Washington states a cognizable declaratory judgment claim regarding the Agreements and Plans in the first half of the claim above, the scope of the clauses encompasses such claim.

But the second half of Expeditors Washington's declaratory judgment claim is more problematic. First, the Expeditors Code of Business Conduct is not incorporated into the Plans/Agreements or Options,[6] nor is there any other indication that the clauses apply to the Code. The portion of the declaratory judgment claim relating to the Code is therefore not within the scope of the forum-selection clauses. It would also be inappropriate to exercise pendent personal jurisdiction over that portion of the claim. *See* Dkt. No. 55 at 16 ("Because personal jurisdiction based on a forum selection clause involves some form of consent by the parties, it would be illogical and unfair to extend personal jurisdiction over claims that clearly fall outside its scope." (quoting Dkt. No. 31 at 20)).

Second, the remainder of the claim—i.e., that "Cadena's fraud and misconduct" affect his ability to exercise stock options and renders his attempted exercise null and void—requires deeper analysis to determine whether it is a claim "with respect to" the Options or the Plans. "The phrase 'with respect to' is generally understood to be synonymous with the phrases 'relating to,' 'in connection with,' and 'associated with.'" *In re Plant Insulation Co.*, 734 F.3d 900, 910 (9th Cir. 2013) (citing *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 (1st Cir. 2011)); *see also Coregis Ins.*

---

[6] The Plans/Agreements define "Option" as "a Non-Qualified Stock Option" granted to the "Optionee" at some point during the year governed by the Plan to purchase a certain number of "shares of Common Stock." *See* Dkt. No. 49-2 at 2 (2016 Stock Option Agreement); Dkt. No. 49-3 at 2 (2015 Stock Option Agreement); Dkt. No. 49-4 at 2 (2014 Stock Option Agreement).

*Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) (same). The Ninth Circuit has held that forum-selection clauses covering disputes "relating to" (or "with respect to") a particular agreement "apply to any disputes that reference the agreement or have some logical or causal connection to the agreement." *Yei A. Sun*, 901 F.3d at 1086 (cleaned up). "The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract." *Id.* Thus, forum-selection clauses in share purchase agreements covering disputes "related to" such agreements applied to a claim that the defendant "engaged in various fraudulent practices to induce [plaintiffs] to invest $2.8 million in [the defendant]"; such claim "relate[d] to the Share Purchase Agreements because the [plaintiffs] invested pursuant to those agreements." *Id.* The Ninth Circuit made note of a similar case in the First Circuit where the court held "that a forum-selection clause covered state-law securities claims because the plaintiff's purchase of privately offered securities 'could not have been made without the agreement.'" *Id.* at 1086–87 (quoting *Huffington*, 637 F.3d at 22).[7] Applying this framework, Expeditors Washington's claim for declaratory judgment that Cadena's fraud and misconduct affect his ability to exercise stock options is a claim "with respect to" the Options or the Plans if it has some "logical or causal connection" to them. The Court assumes without deciding that there is such a connection.

For the foregoing reasons, the Court has personal jurisdiction over Cadena for at least a portion of Expeditors Washington's declaratory judgment claim.

## C.  Expeditors Washington Has Standing to Bring the Declaratory Judgment Claim

In the declaratory judgment context, a justiciable case or controversy under Article III

---

[7] The forum-selection clause in *Huffington* extended to "any action, suit or proceeding with respect to" a "Subscription Agreement" that governed the plaintiff's "rights and duties as a shareholder" in an investment fund. 637 F.3d at 20. The court held that the clause applied to the plaintiff's claims that defendants violated the Massachusetts Blue Sky Law and Consumer Protection Act and committed common-law misrepresentation because "the purchase could not have been made without the agreement" and "[e]ach cause of action Huffington asserted has as a prerequisite the loss that flowed from the agreement and acquisition." *Id.* at 22.

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART, MODIFYING IT IN PART, AND DISMISSING EXPEDITORS WASHINGTON'S COMPLAINT - 10

requires that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (cleaned up); *see also Arizona v. Yellen*, 34 F.4th 841, 848 (9th Cir. 2022) ("Article III empowers this Court only to adjudicate live cases or controversies, . . . not wade into disputes that would require us to issue advisory opinions or declare rights in hypothetical cases." (cleaned up)). The basic question for courts "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127; *see also Amazon.com, Inc. v. Nat'l Ass'n of Coll. Stores, Inc.*, 826 F. Supp. 2d 1242, 1248 (W.D. Wash. 2011).

As a practical matter, "[s]tanding for declaratory relief requires a similar showing as any other case or controversy." *Strike 3 Holdings LLC v. Doe*, 849 F. App'x 183, 185 (9th Cir. 2021). The familiar and "irreducible constitutional minimum" to establish standing under Article III "contains three elements": (1) the plaintiff must have suffered an injury in fact that is concrete and particularized; (2) the injury must be fairly traceable to the challenged conduct of the defendant; and (3) the injury must be likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). For alleged future injuries, the "'threatened injury must be *certainly impending* to constitute injury in fact'"; "'[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). The burden of establishing these elements under Article III is on the party invoking federal jurisdiction. *Lujan*, 504 U.S. at 561.

The R&R concluded that Expeditors Washington lacks standing to pursue the declaratory

1    judgment claim because a favorable decision would not redress its alleged injury. Dkt. No. 55 at

2    24–25.[8] The R&R also recommended that the claim be dismissed with prejudice. Dkt. No. 55 at

3    26. The Court declines to adopt this portion of the R&R.[9]

4            The Court finds that there is an actual controversy between the parties justifying the

5    exercise of subject matter jurisdiction; namely, whether Cadena is permitted to exercise the stock

6    options pursuant to the Stock Option Agreements. *See* Dkt. No. 39 at 5–6, 7–8; Dkt. Nos. 44-16,

7    49-6–49-8. "It is not necessary that there be a threat of imminent litigation [by Cadena against

8    Expeditors Washington] for an actual controversy to exist." *Amazon.com*, 826 F. Supp. 2d at 1249.

9    Instead, Expeditors Washington need only show that its self-avoidance of imminent injury is

10   coerced by a threatened enforcement action. *MedImmune*, 549 U.S. at 130; *see also SanDisk Corp.*

11   *v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) ("Article III jurisdiction may be

12   met where the [declaratory judgment defendant] takes a position that puts the declaratory judgment

13   plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he

14   claims a right to do."). Here, Cadena attempted to enforce his purported right to exercise his

15   options, and Expeditors Washington thwarted the attempt based on its position that Cadena had no

16   such right. Resolving this dispute would "affect the behavior of [Cadena] towards [Expeditors

17   Washington]" in that it would either permit or preclude him from exercising the stock options.

18   *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) ("The 'value of the judicial

19

20   _____

     [8] Because "[t]he relief sought in the [First Amended Complaint] is identical to that sought in the original complaint,"
21   *id.* at 24, the R&R's analysis on this issue relies heavily on the previous report and recommendation recommending
     dismissal of Expeditors Washington's original complaint, Dkt. No. 31.

22   [9] The Court is not bound by its prior decision on the original complaint. "The law of the case doctrine does not preclude
     a court from reassessing its own legal rulings in the same case" or "bar a court from reconsidering its own orders
23   before judgment is entered or the court is otherwise divested of jurisdiction over the order." *Askins v. U.S. Dep't of
     Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018); *see also id.* (on a motion to dismiss an amended complaint, a
     "district court may decide the second motion to dismiss in the same way it decided the first, but permitting the filing
24   of an amended complaint requires a new determination. That leaves the district court free to correct any errors or
     misunderstandings without having to find that its prior decision was 'clearly erroneous.'").

     ORDER ADOPTING REPORT AND RECOMMENDATION IN PART, MODIFYING IT IN PART, AND
     DISMISSING EXPEDITORS WASHINGTON'S COMPLAINT - 12

1   pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than

2   an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant*

3   *towards the plaintiff*." (emphasis in original) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987))).

4        With respect to redressability, Cadena argues—and the R&R concludes—that Expeditors

5   Washington lacks standing because determining the validity of Cadena's attempted exercise of the

6   options would require the Court to rely on "speculation" or "guesswork" as to how an independent

7   decisionmaker—here, Fidelity—"will exercise [its] judgment." Dkt. No. 42 at 26–28; Dkt. No. 55

8   at 24–26; Dkt. No. 57 at 11 ("Expeditors Washington's focus on a 'stake' in the Stock Option

9   Agreements is misplaced" because Fidelity is an independent decisionmaker); *see Clapper*, 568

10  U.S. at 413–14 (explaining that the Supreme Court does not endorse standing theories that require

11  "speculation" or "guesswork as to how independent decisionmakers will exercise their judgment").

12  The R&R concludes that, as a result, declaratory judgment "would neither settle the legal relations

13  at issue nor afford relief from the uncertainty faced by the parties." Dkt. No. 55 at 24.

14       But Cadena and Expeditors Washington are the only two parties to the Stock Option

15  Agreements. Dkt. No. 44-7 at 2 (2016 Stock Option Agreement); Dkt. No. 44-8 at 2 (2015 Stock

16  Option Agreement); Dkt. No. 44-9 at 2 (2014 Stock Option Agreement); *see Douglas v. Don King

17  Prods., Inc.*, 736 F. Supp. 223, 224 (D. Nev. 1990) ("The only parties with a legally recognizable

18  personal stake in this matter are the parties to the contract."). Expeditors Washington granted

19  Cadena the "option to purchase" common stock "upon the terms and conditions set forth [in the

20  Agreement] and in the Plan." *E.g.*, Dkt. No. 49-2 at 2. And the Stock Option Agreements specify

21  only a single manner of exercising the options: "Each exercise of this Option shall be by means of

22  written notice delivered to [Expeditors Washington] at its principal executive office in Seattle,

23  Washington, specifying the number of shares of Common Stock to be purchased." Dkt. No. 44-7

24  at 3 (2016 Stock Option Agreement); Dkt. No. 44-8 at 3 (2015 Stock Option Agreement); Dkt.

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART, MODIFYING IT IN PART, AND
DISMISSING EXPEDITORS WASHINGTON'S COMPLAINT - 13

No. 44-9 at 3 (2014 Stock Option Agreement). The "Plan Administrator" (an undefined term) plays no role in the exercise of options other than potentially permitting payment of the exercise price by means other than a wire transfer and by "mechanism" other than delivery of previously acquired shares: "*[u]pon each exercise* of this Option," the exercise price "shall be paid to [Expeditors Washington] by wire transfer, except to the extent another *method of payment* is permitted by the Plan Administrator," and the optionee "may pay for all or any portion of the exercise price" by delivery of previously acquired shares, or "any other *payment mechanism* which the Plan Administrator may approve at the time of exercise." *Id*. (emphasis added).

After receiving Cadena's written notices of exercise, Dkt. Nos. 49-6–49-7, Expeditors Washington instructed Fidelity Stock Plan Services not to act on Cadena's request. Dkt. No. 49-9 at 2; Dkt. No. 39 at 5. When Cadena objected to Fidelity's refusal to fulfill his request, Fidelity responded that it only "provides administrative and record keeping services for the Expeditors International of Washington, Inc. Stock Option Plan"; that the options "are subject to the terms and conditions of the associated Stock Option Plan documents and agreements"; that "Fidelity, as a directed recordkeeper, follows the instruction of [Expeditors Washington] with regard to activities allowed under the Plans"; and that it "cannot act on [Cadena's] request per instructions received from" Expeditors Washington. Dkt. No. 49-9 at 2. Fidelity also instructed Cadena to "direct any questions related to this matter" to Expeditors Washington. *Id.* These statements square with the Declaration of Trust of the SPS Participant Trust between Fidelity and Expeditors Washington, which provides that Fidelity "shall have no power to manage, sell, or otherwise administer assets of the Trust except as specifically directed by the Participants hereof or by [Expeditors Washington]," and that it "shall be entitled to rely conclusively upon . . . any instructions, notices, communications, directions or instruments of [Expeditors Washington] or of

1    a Participant . . . believed to have been genuine and properly executed." Dkt. No. 44-5 at 2–3.[10]

2         Thus, even if Fidelity possessed the discretion Cadena attributes to it, the Declaration of

3    Trust and Fidelity's avowal that it follows the instructions of Expeditors Washington leaves little

4    room for "speculation" or "guesswork" as to how it would exercise that discretion. *Clapper*, 568

5    U.S. at 413. Indeed, Cadena has already attempted to exercise options by letter to Fidelity, and he

6    already has his answer as to how it would respond: by refusing to act on his request on the

7    instructions of Expeditors Washington. These facts serve only to underscore that the real

8    controversy is between Cadena and Expeditors Washington.

9         It is true that, under the terms of the Trust, Cadena "may request at any time" that Fidelity

10   Trust "sell any or all of the Stock Plan Proceeds held by" Fidelity Trust on his behalf, and that the

11   Trust "shall distribute to a Participant [such as Cadena] from cash held on behalf of that Participant

12   such amount as Participant may request," after payment of fees and expenses. Dkt. No. 42 at 27,

13   Dkt. No. 44-5 at 2. Cadena also makes much of the fact that the contracts at issue are "unilateral"

14   option contracts. *See, e.g.*, Dkt. No. 42 at 28 ("In exercising his options, Mr. Cadena is executing

15   on a unilateral contract, and the dispositive question is whether Fidelity must recognize his proper

16   exercise."). But Expeditors Washington appears to claim that the Stock Option Agreements

17   prevent Cadena from exercising stock options. Dkt. No. 39 at 7–8. And although—as Cadena

18   points out, Dkt. No. 53 at 14—Expeditors Washington has failed to point to any provision of the

19   Stock Option Agreements that permits it to ignore or deny Cadena's attempted exercise of the

20   options, that issue goes to the merits of its claim. In other words, the issue of Expeditors

21   Washington's Article III standing turns on the parties' fundamental disagreement about whether

22

23   [10] The Court may consider the SPS Trust Declaration because Cadena's Article III standing arguments address the
     Court's subject matter jurisdiction. *See Clapper*, 568 U.S. at 409, 414 (whether a standing theory rests on speculation
     about the decisions of independent actors goes to the Article III question of whether an injury is "certainly impending"
24   or "fairly traceable" to defendant); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003)
     (on a 12(b)(1) jurisdictional challenge, a court may look beyond the complaint and consider extrinsic evidence).

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART, MODIFYING IT IN PART, AND
DISMISSING EXPEDITORS WASHINGTON'S COMPLAINT - 15

the Stock Option Agreements affect Cadena's ability to exercise stock options. *See MedImmune*,

549 U.S. at 135–36 ("[E]ven if respondents were correct that the licensing agreement . . . precludes

this suit, the consequence would be that respondents win this case *on the merits—not* that the very

genuine contract dispute disappears, so that Article III jurisdiction is somehow defeated."

(emphasis in original)). And "[a]s a general rule, when the question of jurisdiction and the merits

of the action are intertwined, dismissal for lack of subject matter jurisdiction is improper."

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the*

*Cloverly Subterranean, Geological Formation*, 524 F.3d 1090, 1094 (9th Cir. 2008) (cleaned up);

*see also Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

The Court finds that Expeditors Washington has standing to bring the remaining portion of

its declaratory judgment claim. However, a plaintiff can have Article III standing without statutory

standing. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 734 (1st Cir. 2016) ("An individual's

plausible allegations of a personal injury will generally suffice to plead an injury in fact, even if

the claim is ultimately lacking on the merits."). The Court therefore assesses whether the remaining

portion of Expeditors Washington's declaratory judgment claim meets the standards of Rule

12(b)(6).

**D.   Expeditors Washington Fails to State a Claim Under the Declaratory Judgment Act**

"A court may dismiss an action *sua sponte* under Rule 12(b)(6) when it is clear that the

plaintiff has not stated a claim on which relief can be granted." *Basile v. Los Angeles Film Sch.,*

*LLC*, 827 F. App'x 649, 652 (9th Cir. 2020). To allege a viable federal claim, a plaintiff must

comply with Rule 8(a) of the Federal Rules of Civil Procedure, which requires that a complaint

contain (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short and

plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the

relief sought. The factual allegations of a complaint must be enough to "raise a right to relief above

1   the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to state a

2   claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

4   do not suffice." *Id.*

5       The Declaratory Judgment Act grants "any court of the United States," in a "case of actual

6   controversy within its jurisdiction," the power to "declare the rights and other legal relations of

7   any interested party seeking such declaration." 28 U.S.C. § 2201(a). However, Expeditors

8   Washington's bare request to "declar[e] the rights and obligations of the parties" under the Stock

9   Option Agreements, Dkt. No. 39 at 7, does not elevate its right to relief above the speculative level.

10  Nor does its conclusory assertion that Cadena's fraud and misconduct bar him from exercising

11  stock options and render his attempted exercise of those options null and void. *Id.* at 7–8. "In other

12  words, the Court cannot, in a vacuum untethered from the language of the [Agreements] and the

13  parties' assertions about what that language means in terms of their legal rights under the

14  [Agreements], resolve the ultimate factual question[.]" *Lincoln Benefit Life Co. v. Fundament*, No.

15  SA CV 18-0260-DOC(JDEx), 2018 WL 3854053, at *7 (C.D. Cal. Aug. 7, 2018); *see also Dietz*

16  *Int'l Pub. Adjusters of Cal., Inc. v. Evanston Ins. Co.*, No. CV 09-06662 MMM (EX), 2009 WL

17  10673937, at *4 (C.D. Cal. Dec. 14, 2009) ("[T]he court is unable to declare the parties' respective

18  rights and obligations under the insurance contract without a clear indication of the rights plaintiff

19  asserts and the obligations denied by defendant."). Because Expeditors Washington's declaratory

20  judgment claim merely "tenders naked assertions devoid of further factual enhancement," it is

21  insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (alterations and citation omitted). The Court

22  accordingly dismisses its claim for declaratory judgment without prejudice and with leave to

23  amend.

24

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART, MODIFYING IT IN PART, AND
DISMISSING EXPEDITORS WASHINGTON'S COMPLAINT - 17

1

2

**E.      The Court Dismisses Expeditors Washington's Conversion and Constructive Trust Claims and Denies the Request for Leave to Amend Those Claims**

3        Expeditors Washington does not object to the R&R's findings regarding its conversion and

4   constructive trust claims, and therefore the Court need not review those findings. *Thomas*, 474

5   U.S. at 149; *Reyna-Tapia*, 328 F.3d at 1121. The Court adopts the R&R's conclusions that the

6   Court lacks personal jurisdiction over Cadena with respect to the conversion and constructive trust

7   claims. Dkt. No. 55 at 14–17. The Court also adopts the R&R's conclusion that, in the alternative,

8   Expeditors Washington lacks standing to assert the conversion and constructive trust claims, and

9   that further leave to amend should be denied. *Id.* at 18–24. Because the Court lacks subject matter

10  jurisdiction over these claims, it does not reach the question of whether Expeditors Washington

11  has stated a claim for conversion or constructive trust, and does not adopt that portion of the R&R.

12  *Id.* at 26–28. And "because a lack of jurisdiction deprives the dismissing court of any power to

13  adjudicate the merits of the case," this dismissal "must be without prejudice[.]" *Hampton v. Pac.*

14  *Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017). Accordingly, the Court also declines to

15  adopt the portion of the R&R dismissing these claims with prejudice.

16                                      **IV. CONCLUSION**

17        For all the foregoing reasons, the Court:

18        1.   ADOPTS IN PART and MODIFIES IN PART the R&R;

19        2.   GRANTS IN PART Cadena's motion to dismiss Expeditors Washington's

20             complaint as follows:

21                  a.   The conversion and constructive trust claims are DISMISSED without

22                       prejudice and without leave to amend;

23                  b.   The declaratory judgment claim is DISMISSED without prejudice and with

24                       leave to amend except as to the portion of the claim seeking a declaration

that "Cadena's fraud and misconduct over time constitutes a violation of the Expeditors Code of Business Conduct," Dkt. No. 39 at 7, which is dismissed without leave to amend.

Should Expeditors Washington choose to file a second amended complaint, it must do so within 14 days of the date of this Order.

Dated this 10th day of February, 2023.

Lauren King
United States District Judge

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART, MODIFYING IT IN PART, AND DISMISSING EXPEDITORS WASHINGTON'S COMPLAINT - 19